RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CARL ROBERT ARMSTRONG; DONNA M. BRADLEY;
RENAE ARMSTRONG; LORI ARMSTRONG; BRANDY
ARMSTRONG; CARL R. ARMSTRONG, JR.; JEAN K.
ARMSTRONG,

          *Plaintiffs-Appellees,*

    *v.*

CITY OF MELVINDALE, et al.,

          *Defendants,*

DAVID FOBAR; BRAD GRATZ,

          *Defendants-Appellants.*

No. 04-2192

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-73492—Paul D. Borman, District Judge.

Argued: October 27, 2005

Decided and Filed: January 6, 2006

Before: GILMAN and COOK, Circuit Judges; MILLS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Marcia L. Howe, JOHNSON, ROSATI, LaBARGE, ASELTYNE & FIELD, Farmington Hills, Michigan, for Appellants. Cynthia Heenan, CONSTITUTIONAL LITIGATION ASSOCIATES, Detroit, Michigan, for Appellees. **ON BRIEF:** Marcia L. Howe, JOHNSON, ROSATI, LaBARGE, ASELTYNE & FIELD, Farmington Hills, Michigan, for Appellants. Cynthia Heenan, CONSTITUTIONAL LITIGATION ASSOCIATES, Detroit, Michigan, for Appellees.

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

1

---
**OPINION**

---

COOK, Circuit Judge.  Defendants-Appellants, Southgate Police Officers David Fobar and Brad Gratz, appeal the district court's order denying their motion for summary judgment with respect to:  (1) Plaintiffs-Appellees' claim of a Fourth Amendment violation, brought under 42 U.S.C. § 1983, arising out of Defendants' execution of a search warrant on the premises of Plaintiffs' business, and (2) their defense of qualified immunity.  Because we find that a reasonable person in the officers' position would not have known that his conduct violated a clearly established right, we reverse the district court's denial of Defendants' motion for summary judgment on qualified immunity grounds.

I.

A. Factual Background

In 1999 Defendants executed a warrant on the premises of Cad Visions,[1] a Southgate, Michigan business (allegedly known as a center of narcotics activity) to inventory and seize assets in connection with a forfeiture action pending against John Ziriada, the owner and longtime friend of Carl Armstrong, one of the plaintiffs.[2]  During the search, Armstrong entered the store and asserted ownership of the computers in the building.  He claimed to have ownership documents, but presented Defendants with only his business card.  Defendants seized the computers.

Defendants then sought a warrant to search Armstrong's business, Computer Time, located in Melvindale, Michigan, for the documents that would substantiate Armstrong's ownership claim.  Before applying for the warrant, Defendants consulted a county prosecutor, Karen Plants, about the legality of obtaining such a warrant.  Plants advised the Defendants that she "did think it was legally feasible" and she ultimately reviewed the affidavit and warrant Fobar drafted, finding it unobjectionable.  Defendants then presented those documents to a judge, who issued the warrant.

The resulting search failed to turn up any documentation, because, as it turns out, Armstrong lied about owning the computers. But the officers' search of the premises did turn up marijuana.  Defendants did not seize the drugs themselves; instead they informed the local Melvindale police about the discovery.  The Melvindale police then obtained a separate warrant, seized a large quantity of contraband, and soon began forfeiture proceedings against the Armstrongs.  The forfeiture action was later dismissed after a judge suppressed the evidence on the ground that both searches (the one conducted by Defendants and the one conducted by the Melvindale police) were unconstitutional.

B. Procedural Background

The Armstrongs then filed suit, asserting various causes of action under both federal and state law. Defendants responded by moving for summary judgment on all claims, which the district court granted in part and denied in part.  The court granted Defendants' motion for summary judgment with respect to Plaintiffs' federal conspiracy claim as well as their state-law claims for

---

[1]The spelling varies throughout the record.  Variations include  "Cad Visions," "CadVisions," and "CAD Visions."

[2]Originally, seven members of the Armstrong family were named plaintiffs.  By Stipulation and Order, four individuals were dismissed from the action and only Carl, his wife Donna, and his mother Jean (who holds title to the building) now remain as parties to the case.

malicious prosecution, conversion, and trespass. Summary judgment was also granted with respect to Plaintiffs' claims for constitutional violations, brought via 42 U.S.C. § 1983, of their First Amendment, Due Process, and Equal Protection rights. Plaintiffs do not appeal these rulings. Defendants appeal only the denial of summary judgment with respect to Plaintiffs' claimed Fourth Amendment violation and their claim to qualified immunity for any such violation.

II.

A. Jurisdiction/Standard of Review

Circuit "courts generally only have jurisdiction over the final decisions of district courts," *Crockett v. Cumberland Coll.*, 316 F.3d 571, 577 (6th Cir. 2003); 28 U.S.C. § 1291, and the "denial of summary judgment is ordinarily not a final judgment." *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004) (citing *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002)). But where, as here, Defendants do not dispute the facts—they claim instead that the alleged facts do not reflect a violation of clearly established law—"a district court's denial of a claim of qualified immunity . . . is an appealable 'final decision' . . . notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see Hoover*, 307 F.3d at 465 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)).

The appealable issue on review before us "is a purely legal one: whether the facts alleged . . . support a claim of violation of clearly established law," *Mitchell*, 472 U.S. at 529 n.9, and accordingly, we review the district court's denial of qualified immunity de novo under the usual summary judgment standard. *See* Fed. R. Civ. P. 56(c).

B. Qualified Immunity Framework

Qualified immunity shields public officials who perform discretionary functions from the necessity of defending against tort liability so long as their conduct does not violate clearly established rights of which a reasonable official would have known. *See Fisher v. Harden*, 398 F.3d 837, 842 (6th Cir. 2005). Whether qualified immunity applies turns on the "objective legal reasonableness" of the official's action, viewed on a fact-specific, case-by-case basis. *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 999 (6th Cir. 1994) (citation omitted). Qualified immunity is an affirmative defense; once asserted, the "burden of proof is on the plaintiff to show that the defendant[s] [are] not entitled to qualified immunity." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citing *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991)).

The doctrine is designed to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To analyze claims of qualified immunity the court uses a two-part test: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).[3]

_____

[3]Panels of this court occasionally have added a third step to the inquiry: "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004). This third inquiry "may in some cases increase the clarity of the proper analysis. In many factual contexts, however, . . . the fact that a right is 'clearly established' sufficiently implies that its violation is objectively unreasonable." *Estate of Carter*, 408 F.3d at 311 n.2. This opinion employs the two-step analysis.

## 1. Constitutional Violation

Whether a constitutional violation occurred is a threshold issue:  if the officers' conduct violated no constitutionally protected right, there is no need for further analysis.  *Saucier*, 533 U.S. at 201.  Here, Plaintiffs argue that Defendants' warrant was constitutionally deficient because the Fourth Amendment prohibits the issuance of a search warrant except upon a showing that probable cause exists to believe that fruits, instrumentalities, or evidence of a crime will be found at the place sought to be searched.  *See Warden v. Hayden*, 387 U.S. 294, 301-02 (1967).  Plaintiffs allege that when the officers executed the search of their Melvindale business they were not searching for evidence of a crime, and thus, the search violated their constitutional rights. We agree.

Defendants respond with two arguments to support the constitutional validity of the warrant, both of which fall short.  First, they argue that the warrant was valid under several provisions of Michigan's drug forfeiture laws.  At oral argument, however, Defendants conceded that they neglected to argue this point of law below.  Although both parties briefed *this* court on the issue, the failure to present an issue to the district court forfeits the right to have the argument addressed on appeal.  *See Legg v. Chopra*, 286 F.3d 286, 294 (6th Cir. 2002) (citing *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993)) ("In general, 'issues not presented to the district court but raised for the first time on appeal are not properly before the court.'") (citation omitted).  It is well-settled that this court's "function is 'to review the case presented to the district court, rather than a better case fashioned after a[n] . . . unfavorable order.'" *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005) (citation omitted).

Second, Defendants posit that *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), requires a finding of no Fourth Amendment violation. Defendants point to the fact that the *Zurcher* Court upheld the constitutionality of a warrant issued to search the premises of a third party not suspected of criminal wrongdoing.  Similarly, no suspected wrongdoing supported the issuance of the warrant here, say Defendants.

The *Zurcher* feature missing here, however, is evidence of a crime.  In *Zurcher* the police had probable cause to believe that evidence of a crime would be located on the third-party's premises.  Though Defendants may have had probable cause to believe the ownership documents would be found on the Melvindale premises, no probable cause existed to believe the documents themselves evidenced a crime.  Although Armstrong asserted an ownership interest in the seized computers, the officers did not seek to obtain the warrant on the strength of any link between those ownership documents and a crime.[4]

Because the object of Defendants' search—the ownership papers—lacked any evident criminal link, the search was unconstitutional and Defendants violated Plaintiffs' Fourth Amendment rights by conducting it.

---

[4]The constitutional shortcomings of the warrant cannot be saved by the portion of the warrant that states probable cause existed to believe Armstrong's business was acting as a "shell" corporation to conceal or legitimize Ziriada's drug proceeds.  Defendants never argued in the district court that the search was constitutional for this reason and thus forfeited this argument. Moreover, Defendants admitted in their brief and in their deposition testimony that they sought a warrant to look only for the ownership papers.

## 2. Clearly Established Right

Having determined that there was a constitutional violation, the question now becomes whether the Fourth Amendment right violated by Defendants was clearly established. "In undertaking this inquiry, we do not assess the right violated at a high level of generality, but, instead, we must determine whether the right [is] 'clearly established' in a more particularized . . . sense . . . .'" *Myers v. Potter*, 422 F.3d 347, 356 (6th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)). The Supreme Court has stated that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. It is not necessary, however, for the exact factual situation to have previously been declared unlawful, so long as Defendants have "fair warning." *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002).

In the context of an unconstitutional warrant, an official "will not be immune if . . . it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley*, 475 U.S. at 341. Put another way, if there can be reasonable disagreement, then the right cannot be considered "clearly established." Accordingly, to be entitled to qualified immunity, Defendants must "exercis[e] reasonable professional judgment" in applying for the warrant. *Id.* at 346.

Probable cause to search requires "a 'substantial basis for . . . [concluding]' that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (alterations in original) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The Supreme Court has never quantified the degree of certainty required for a determination of probable cause. It has stated that "probable cause means something 'less than evidence that would justify . . . conviction,' but 'more than bare suspicion.'" *Greene v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

Defendants present two arguments that they did not violate a clearly established right. First, they again proffer the forfeited argument regarding the Michigan drug forfeiture laws. Second, they argue that the assurances of constitutional propriety gained from consultation with Prosecutor Plants, her review of the warrant and supporting affidavit, and the judge's issuance of the warrant rendered reasonable their belief that probable cause supported the issuance of the warrant.

To rebut this argument, Plaintiffs point to Sixth Circuit and Supreme Court precedent holding that the issuance of a warrant is not an automatic shield from liability but is "only one factor [used] in applying the test of 'reasonable professional judgment' to the officers' conduct." *Id.* at 1107 (citation omitted); *Malley*, 475 U.S. at 345-46 ("[O]urs is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should."). We agree that such reliance does not guarantee immunity, but, as the Supreme Court has said: "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Malley*, 475 U.S. at 344-45 (internal citation omitted).

The district court never reached the question of whether the officers' reliance on the issuance of the warrant was unreasonable. It instead focused only on the fact of a constitutional violation. This suggests a misconception; even with a constitutional breach, the law accords qualified immunity protection under appropriate circumstances. This case presents such circumstances.

Defendants consulted with Prosecutor Plants because they were uncertain as to whether a warrant to search the Melvindale premises was constitutional. Plants not only advised them that a warrant would be constitutionally permissible, she also sanctioned a draft of the warrant and

supporting affidavit.[5]  Only then did Defendants apply to a judge for the warrant.  With the judge's approval, Defendants executed the search, and Plaintiffs do not allege that the search exceeded the scope of the warrant.

The case of *Greene v. Reeves*, 80 F.3d 1101 (6th Cir. 1996), lends support to our conclusion.  In *Greene*, a postal worker saw a postcard he believed depicted child pornography.  He alerted a mail specialist who contacted the police.  After investigating further the officers approached a local prosecutor for legal advice about whether probable cause existed to arrest the distributors of the postcard and to search their home.  As a result, the prosecutor prepared the necessary affidavits and warrants, and a judge signed them.  The police then executed a search, confiscated various photographs, and arrested the suspected distributors.  A grand jury later indicted them, but the charges were dismissed.  The plaintiffs then brought a claim, pursuant to 42 U.S.C. § 1983, alleging a violation of their Fourth Amendment rights.

In finding that qualified immunity shielded the officials from liability, this court noted that "a postal worker, a prohibitive mail specialist, a . . . detective, a commonwealth prosecutor, the judge . . ., and a grand jury were sufficiently concerned over the conduct . . . to take action." *Greene*, 80 F.3d at 1107.  This court thought it unlikely that all such officials were not only wrong but also unreasonable in their beliefs.  *Id.*  Additionally, the *Greene* court noted the difficulty in distinguishing between photos that violated child pornography laws and photos that were simply in bad taste.  *Id.*

This case is similar.  Like the defendants in *Greene*, the officers expressed their uncertainty about the law to a prosecutor and received assurances in response before applying for the warrant.  Under these circumstances, we determine that Defendants did not exceed the "broad range of reasonable professional judgment" accorded under the doctrine of qualified immunity.  *Id.* at 1107.  Defendants wrongly believed that probable cause supported the warrant, but their mistake was not so unreasonable as to deny them qualified immunity.  That a court later declared the search unconstitutional matters not because officials are "'entitled to qualified immunity [when] their decision was *reasonable*, even if mistaken.'" *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995) (alteration and emphasis in original) (quoting *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)); *see Anderson*, 483 U.S. at 641 (noting that law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity).

Because the officers exercised reasonable professional judgment in applying for the warrant and because reasonable officers in Defendants' position might have believed that the warrant should have issued, we cannot say that Defendants violated a clearly established right by conducting the search of Plaintiffs' business.

### III.

We reverse the district court's denial of Defendants' motion for summary judgment on qualified immunity grounds and remand with instructions to enter summary judgment for Defendants.

---

[5]Plaintiffs suggested at oral argument that the "consultation" with Prosecutor Plants should be discounted because, in essence, it was part of a conspiracy among the Defendants, Plants, and the judge to violate Plaintiffs' constitutional rights.  The district court resolved this issue against Plaintiffs and Plaintiffs did not appeal that decision.