NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0104n.06
Filed: February 9, 2009

No. 07-6180

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **CANDICE R. SULFRIDGE; ADAM T. DAVIS,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiffs-Appellees*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **JOHN HUFF,** | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*, | ) | |
| | ) | |
| **LARRY G. MOORE, ET AL.,** | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

BEFORE:    BOGGS, Chief Judge; COLE and COOK, Circuit Judges.

**COLE, Circuit Judge.** These consolidated actions, for injury and damages under 42 U.S.C. § 1983, arise from a shooting incident initiated by Defendant-Appellant John Huff ("Officer Huff" or "Huff") on April 4, 2005. Plaintiffs-Appellees Candice R. Sulfridge and Adam T. Davis (collectively, "Plaintiffs") claim that Officer Huff used excessive force in violation of their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

Officer Huff argues that the district court erred in denying him summary judgment on his qualified-immunity claim because he claims that his use of deadly force was justified. He also asserts that he is entitled to summary judgment as a matter of law because, as a result of the incident giving rise to this lawsuit, Davis pleaded guilty to aggravated assault in a separate state criminal

proceeding. Finally, Officer Huff claims that Sulfridge was never seized, and, therefore, cannot claim an excessive force violation under 42 U.S.C. § 1983. For the reasons set forth below, we **AFFIRM** the decision of the district court and **REMAND** for proceedings consistent with this opinion.

## I. BACKGROUND

**A.    Factual Background**

On April 5, 2004, Davis drove Sulfridge to the Wal-Mart in Knoxville, Tennessee. Davis parked Sulfridge's car in the parking lot—the car was parked between two cars and facing another car. Davis entered the Wal-Mart while Sulfridge waited in the car. At one point, Sulfridge left the vehicle to look for Davis, but she returned to the car when she could not find him. Later, Davis exited the Wal-Mart and got into the vehicle's driver seat. It is here that the parties' accounts of the evening differ.

In her declaration, Sulfridge states the following:

9.      A person in uniform came to the side of the car.

10.     [Sulfridge] later learned that person was Knox County Sheriff Deputy John Huff.

11.     As Deputy Huff was at the driver side of the car he was yelling and cussing at [Davis].

12.     Deputy Huff's [sic] was acting crazy, he was in a rage.

13.     Deputy Huff was banging his gun on the car and on the window of the car.

14.     [Sulfridge] was scared and terrified by Deputy Huff's actions.

15.     [Davis] began to back [Sulfridge's] car out of the parking space.

16. Deputy Huff walked along the car as [Davis] was backing it out of the space yelling stop or [he'll] shoot.

17. [Davis] stopped the car after backing out of the parking space.

18. Deputy Huff was standing to the left of the front left quarter panel of [Sulfridge's] car pointing his gun at [Davis].

19. [Davis] put up his hands.

20. Deputy Huff shot one shot.

21. The front of [Sulfridge's] car was passed [sic] Deputy Huff when he shot the first shot.

22. When [Davis] was shot by the first shot the car rolled forward and Deputy Huff shot a second time.

23. Deputy Huff was at a 90-degree angle to the driver's side window of [Sulfridge's] car and almost 1/2 of the car had passed him when he fired the second shot through the driver's window.

. . .

29. Deputy Huff was always to the side of the car.

30. The car was never pointed at Deputy Huff.

31. To [Sulfridge's] knowledge the car did not touch Deputy Huff as [Davis] was pulling out of the parking space.

(Decl. of Candice Sulfridge, Joint Appendix ("JA") 457-58.) Davis avers that "[i]f the car touched Deputy Huff as [Davis] was pulling out of the parking lot, that would have occurred because Deputy Huff continued to walk closely along the side of the car as [Davis] was backing and any touching was accidental." (JA 493.)

In contrast, Officer Huff offers the following account of the confrontation:

Ms. Sulfridge saw Officer Huff at the window before Plaintiff Davis started backing out of the parking space. Officer Huff ordered Plaintiff Davis to get out of the car. Ms. Sulfridge told Mr. Davis to give back the merchandise and to stop. Instead, Mr. Davis backed the car all the way out of the parking space and stopped. Ms. Sulfridge did not get out of the car when Officer Huff banged on the car or when he told Mr. Davis to get out of the car. She did not get out of the car when Mr. Davis backed the car out of the parking space and stopped the car before he started driving forward.

Plaintiff Davis started the vehicle and struck Officer Huff on the left thigh area with the vehicle while backing out of the parking space. Plaintiff Davis then put the vehicle in drive and drove towards Officer Huff causing Officer Huff to jump out of the way to avoid being struck again. Officer Huff then fired two shots.

(Final Br. of Appellant ("Huff Br.") 11) (internal citations omitted).

Following the shooting, Davis drove Sulfridge out of the Wal-Mart parking lot to "another place" nearby. (JA 459.) Davis exited the car and got down on the ground. Sulfridge left the car to "see what happened to [Davis]"—Davis had been hit by at least one of Officer Huff's shots. (JA 460, 491-92.)

Other officers arrived on the scene and ordered Sulfridge to the ground. Sulfridge alleged that though she complied with the order, she was "kicked in [her] right leg and told to roll over. They beat [her] pretty hard." (JA 487.) Those officers handcuffed Sulfridge and placed her in the back of a police cruiser. Later, after questioning her, Knox County officers released Sulfridge at the University of Tennessee Hospital. They also arrested Davis and transported him to the same hospital. Sulfridge's car was seized and towed from the scene.

A state grand jury indicted Davis on eight counts, including two counts of aggravated assault and theft. Davis pleaded guilty to one count of aggravated assault and one count of theft, and he received the recommended four-year sentence.

- 4 -

**B.        Procedural Background**

In April of 2005, Sulfridge and Davis each filed separate lawsuits in both federal court and state court against Defendants Knox County, Larry G. Moore, Janette Harris, Randy Hinton, Chestnut Street Garage, several "John Does," and Officer Huff stemming from the same incident occurring on April 5, 2004. All four lawsuits were consolidated in federal court. Nonetheless, because the district court declined supplemental jurisdiction over the state law claims and remanded those claims to state court, Sulfridge and Davis's 42 U.S.C. § 1983 claims were the only claims before the district court.

In February of 2007, Defendants Knox County, Moore, Harris, and Huff filed motions for summary judgment. The district court granted summary judgment in favor of Moore and Harris but denied summary judgment as to Knox County and Huff. The district court found that genuine issues of material fact existed as to "whether a reasonable officer in the position of defendant Huff had probable cause to believe that Davis posed a serious threat of physical harm, either to Huff or to anyone else." (District Court Memorandum Opinion of Sept. 10, 2007 ("Mem. Op.") 13, JA 107.) The district court also determined that Plaintiffs had offered sufficient evidence that the shots Officer Huff fired were objectively unreasonable.

Officer Huff then filed this interlocutory appeal, which challenges the district court's denial of qualified immunity. Plaintiffs responded that this Court lacks jurisdiction to hear the appeal "because the district court's summary judgment order merely determined that the pretrial record sets forth a genuine issue of material fact for trial." (Appellees' Opening Br. 3.)

## II. LAW AND ANALYSIS

### A.    Jurisdiction

The first issue we must consider is whether this Court has jurisdiction.  "Title 28 U.S.C. §

1291 limits appellate jurisdiction to 'final decisions of the district courts.'"  *Estate of Kirby v. Duva*,

530 F.3d 475, 480 (6th Cir. 2008).  As a general matter, a district court's grant of summary judgment

on a qualified-immunity claim constitutes a final appealable decision under 28 U.S.C. § 1291.  *See,

e.g.*, *Dunigan v. Noble*, 390 F.3d 486, 488 (6th Cir. 2004).  A district court's denial of summary

judgment on qualified immunity, however, is a final decision under § 1291 only "to the extent that

it turns on an issue of law."  *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

As this has Court previously stated, "for appellate jurisdiction to lie over an interlocutory

appeal, a defendant seeking qualified immunity must be willing to concede the facts as alleged by

the plaintiff and discuss only the legal issues raised by the case."  *Sheets v. Mullins*, 287 F.3d 581,

585 (6th Cir. 2002) (citations omitted).  To the extent that a defendant's qualified-immunity

arguments "rely . . . on a disputed version of the facts, this court does not have jurisdiction to

consider [the] appeal."  *McKenna v. City of Royal Oak*, 469 F.3d 559, 561 (6th Cir. 2006).  On the

other hand, to the extent that the "'facts' in dispute are the ultimate issues to be decided by applying

law to the basic facts[,] . . . [t]hese 'facts,' . . . are mixed issues of law and fact, which we treat as

issues of law, not issues of fact."  *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (en banc)

(citing *Whitney v. Brown*, 882 F.2d 1068, 1071 (6th Cir. 1989)).  Because the issues on this appeal

involve precisely such mixed issues of law and fact, we find that this Court has jurisdiction to

consider Huff's appeal.

**B.      Qualified immunity**

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We review a district court's denial of qualified immunity de novo. *Sheets*, 287 F.3d at 586. The defendant bears the burden of pleading the defense, *id*., while the burden of proof is on the plaintiff to show that the defendant is not entitled to immunity. *Wegener v. Covington*, 933 F.3d 390, 392 (6th Cir. 1991).

"[I]n judging whether [Huff's] actions were reasonable, we must consider the risk of bodily harm that [Huff's] actions posed to [Plaintiffs] in light of the threat to the public that [Huff] was trying to eliminate." *Scott v. Harris*, 127 S. Ct. 1769, 1778 (2007). This Court has set out the following factors "to evaluate whether an officer's actions are reasonable: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Sigley v. City of Parma Heights*, 437 F.3d 527, 534 (6th Cir. 2006) (citations omitted). A police officer may, in certain circumstances, reasonably use deadly force to prevent escape "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others . . . ." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). But the proper application of the test of reasonableness "requires careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Garner*, 471 U.S. at 8-9).

The legal reasonableness of Huff's actions involves several questions of fact, including: (1) the circumstances that led to Davis backing the car out of the parking spot; (2) whether and how Officer Huff was struck by Sulfridge's car; (3) whether Davis threatened Huff by pointing the vehicle at Officer Huff; (4) when and from where Officer Huff fired his first shot; (5) whether Davis drove the car toward Officer Huff after the first shot; and (6) when and from where Office Huff fired his second shot. Taking the evidence in a light most favorable to the Plaintiffs, the testimony and affidavits call into question whether the force used was reasonable under the circumstances. Because we cannot resolve whether and to what extent Davis posed a continuing threat both to Officer Huff and the public, we cannot conclude that Officer Huff's use of force was reasonable as a matter of law.

Similarly, Officer Huff is incorrect that issue preclusion or judicial estoppel bars Plaintiffs' § 1983 claims here. Huff is correct that Plaintiffs may not argue that Davis did not commit aggravated assault. Davis pleaded guilty to committing aggravated assault, and Plaintiffs' assertions to the contrary must be rejected. But the fact that Davis assaulted Huff does not necessarily lead us to determine that Officer Huff acted reasonably in employing deadly force during the encounter. *See Sigley*, 437 F.3d at 534 (stating that reasonableness depends on, among other things, whether the suspect posed an immediate threat to the officer or others). Huff attempts to argue the disputed facts through these preclusive doctrines, but, the district court—in discussing preclusion and judicial estoppel—correctly determined that "under the alleged facts, [Davis's] guilty plea may not be inconsistent with his claim of excessive force. Here, there are two points at which Davis may have committed an aggravated assault . . . [and] Huff fired at Davis after the alleged assault occurred and

not to prevent it from occurring." (Mem. Op. 14, JA 108.)  There is nothing inconsistent between Davis's guilty plea and Plaintiffs' assertions that the assault and its perceived threat terminated before Officer Huff shot into the vehicle.  To be sure, Plaintiffs may prevail on their claims against Officer Huff if they can show that the shots fired by Huff were not made in self-defense or in defense of others because Davis no longer posed a threat of harm at the time of the shootings.

Because genuine issues of material fact as to Officer Huff's qualified immunity claim exist, we affirm the district court's decision.

**B.      Whether Sulfridge was seized**

Officer Huff also argues that Sulfridge cannot make a § 1983 excessive force claim because "she was not struck by either shot [into the vehicle and, therefore,] Officer Huff's actions did not constitute a seizure under the Fourteenth Amendment." (Huff Br. 29.)  However, this argument was neither presented to, nor considered by, the district court.  "[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 765 n.9 (6th Cir. 2008) (quoting *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006)).  Thus, we decline to consider the merits of Officer Huff's arguments regarding Sulfridge's seizure.  We note, however, that Officer Huff may present this argument on remand to the district court.  *See McCloud v. Testa*, 227 F.3d 424, 427 (6th Cir. 2000).

### III.  CONCLUSION

For the preceding reasons, we **AFFIRM** the district court's denial of qualified immunity and **REMAND** for proceedings consistent with this opinion.