NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0404n.06

No. 17-2475

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MARSHALL BROWN,                                )
                                               )
        Plaintiff-Appellant,                   )
                                               )
v.                                             )       ON APPEAL FROM THE
                                               )       UNITED STATES DISTRICT
SQUARE DEAL BUILDING SUPPLY,                   )       COURT FOR THE EASTERN
                                               )       DISTRICT OF MICHIGAN
        Defendant-Appellee.                    )
                                               )

**FILED**
Aug 10, 2018
DEBORAH S. HUNT, Clerk

Before: WHITE, DONALD, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge.  Marshall Brown complains that his employer, Square Deal Building Supply, interfered with his rights under the Family and Medical Leave Act and the Michigan Worker's Disability Compensation Act by firing him after he requested medical leave. Finding that Square Deal did no such thing, the district court granted Square Deal's motion for summary judgment.  We AFFIRM.

I.

Brown began working for Square Deal in 1996.  On May 15, 2014, while working as Warehouse Manager, Brown fell from a truck and sustained injuries.  Due to these injuries, Brown was on medical leave for three months.  After the leave, Brown returned to work as Warehouse Manager until December 2016, when he provided Square Deal with a form from his doctor indicating that he was permanently disabled.  His doctor noted that his work needed to be restricted

to no more than four to six hours of work per day; no lifting over twenty pounds; limited walking; and no climbing, bending, or squatting.

These limitations meant that Brown could not work the necessary forty-hour work week required of a Warehouse Manager or perform some aspects of the position, including assisting in loading shipments. Yet Brown remained in the position of Warehouse Manager until around March 17, 2017. On March 17, Brown met with Square Deal General Manager Harold Brenizer. According to Brenizer, the two discussed Brown's inability to handle the responsibilities of the Warehouse Manager position. Brown was removed from his full-time, salaried position as Warehouse Manager and became an hourly, part-time employee, effective March 20, 2017.

Four days after this discussion, Brown visited a doctor. The next day, March 22, he gave Square Deal a new Disability/Work Status Form. The form stated that Brown was to be off work completely for eight weeks, from March 21 to May 22. Brown did not return to work and instead began receiving workers' compensation benefits, which he continues to receive. Brown still has not been medically cleared to return to work. The parties dispute whether Square Deal fired Brown on March 22, or whether Brown remained an employee who went on leave.

Brown sued Square Deal, alleging that the company violated his rights under the Family and Medical Leave Act (FMLA) and the Michigan Worker's Disability Compensation Act (MWDCA), by terminating his employment once he sought medical leave on March 22, 2017.[1] Square Deal moved to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. The district court granted summary judgment in favor of Square Deal, finding as

---

[1] Brown also raised a claim under the Michigan Persons with Disabilities Civil Rights Act but has since abandoned that claim.

a matter of law that Square Deal had never terminated Brown's employment and that Brown could not, therefore, establish liability under either the FMLA or the MWDCA.

## II.

Because his alleged termination is the only "adverse employment action" Brown cited before the district court,[2] the critical question is whether there was a genuine issue of material fact as to whether Square Deal fired Brown. Without an "adverse employment action," both of Brown's claims fail. The district court found no firing as a matter of law. Brown argues that this was error.

*Family and Medical Leave Act.* "The FMLA enables employees covered by the Act to take up to twelve weeks of leave per year for various purposes specified in the statute, including the employee's own 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Bryson v. Regis Corp.*, 498 F.3d 561, 569 (6th Cir. 2007) (quoting 29 U.S.C. § 2612(a)(1)(D)). Once the leave period ends, the employee "must be reinstated to [his] position or to a position equivalent in pay, benefits, and other terms and

---

[2] For the first time on appeal, Brown contends that even if he were not fired, he was still subjected to adverse employment actions by Square Deal that either (1) discouraged him from exercising his FMLA rights or (2) were taken in retaliation for attempting to exercise his FMLA rights. According to Brown's brief on appeal, Square Deal stripped him of his Warehouse Manager position and pay, made him a part-time employee, and discontinued his pay and health insurance benefits "in the context of his request for leave." By failing to present this argument to the district court, Brown has forfeited "the right to have the argument addressed on appeal." *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006). But Brown's argument also fails on the merits. Square Deal removed Brown from the Warehouse Manager position, and thereby made him a part-time employee, several days before Brown visited the doctor and subsequently asked for medical leave. The complained-of actions came prior to Square Deal learning that Brown had requested medical leave and, therefore, do not show that Square Deal interfered with Brown's exercise of his rights, or retaliated against him for seeking medical leave, under the FMLA. *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (noting that an element of an interference claim is that the employer must have notice of the employee's intention to take leave); *id.* at 508 (noting that "retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights" (citation omitted)).

conditions of employment." *Id.* at 569–70 (citing 29 U.S.C. § 2614(a)(1)). There are two theories of liability under the FMLA: (1) the entitlement or interference theory, and (2) the retaliation or discrimination theory.[3] *Id*. at 570.

Brown proceeds under both theories. Brown explains that both are premised on his allegation that Square Deal terminated his employment in response to his leave request. *See* Appellant Br. at 22 (contending that he presented evidence that Square Deal "terminated him immediately after he requested FMLA leave and benefits," which "discourage[d] [Brown] from using his FMLA leave and . . . thereby interfered with the exercise of his FMLA rights"); *id.* at 25–26 (contending that Square Deal retaliated against him for exercising his FMLA rights by terminating his employment).

But viewing the evidence in the light most favorable to Brown, as we must when reviewing a district court's decision on a motion for summary judgment, *see Logan v. Denny's Inc.*, 259 F.3d 558, 566 (6th Cir. 2001), we cannot say that the district court erred by concluding that no genuine issues of material fact remained as to whether Square Deal terminated Brown's employment. As the district court found, the evidence indicates that Brown remains employed by Square Deal, is on leave, and is receiving workers' compensation benefits while on leave. Both Brenizer and Debbie Sikora, the Human Resources Director for Square Deal, attested to this in affidavits

---

[3] We have described those theories as follows:

> The "entitlement" or "interference" theory arises from [29 U.S.C.] §§ 2615(a)(1) and 2614(a)(1), which make it unlawful for employers to interfere with or deny an employee's exercise of [his] FMLA rights (§ 2615(a)(1)), and which require the employer to restore the employee to the same or an equivalent position upon the employee's return (§ 2614(a)(1)). . . . The "retaliation" or "discrimination" theory, on the other hand, arises from [29 U.S.C.] § 2615(a)(2), which prohibits an employer from discharging or discriminating against an employee for "opposing any practice made unlawful by" the Act.

*Bryson*, 498 F.3d at 570 (quoting 29 U.S.C. § 2615(a)(2)).

provided to the district court. Moreover, in a signed application for mediation or a hearing before the Michigan Workers' Compensation Agency dated July 17, 2017, nearly four months after he requested medical leave from Square Deal, Brown listed Square Deal as his employer and listed the dates of his employment with Square Deal as "4/1992" to "present."

Likewise, the communications between Brown and Sikora in late March 2017 indicate that Square Deal never fired Brown. On March 27, 2017, Brown contacted Sikora asking "about some details about my 401k, and health insurance, *while I am off for the 8 weeks*." (Emphasis added). Brown also queried whether his paycheck would now come from the company that paid workers' compensation benefits. Sikora responded, stating that she sent Brown's disability form to the company's insurer, who would be paying Brown's workers' compensation benefits going forward. Although Sikora indicated that Brown's last *payroll* check would arrive at the end of March, this did not mean that Brown's employment was terminated; rather, from that point on, Brown's wages would be "paid thru [his] worker's compensation claim." Moreover, Sikora explained that Brown's transitioning from being a full-time worker to a part-time worker as of March 20, 2017, caused a triggering event for health-insurance purposes. Notably, the triggering event was the reduction to part-time employment, not a termination of employment altogether. And, in a follow-up email, Sikora forwarded a message from the insurance company that would be paying Brown's workers' compensation benefits, which stated that "[a] check was issued yesterday for the 3/21-3/28 and will be issued weekly *until he returns back to work or until we receive an updated work status*." (Emphasis added). The record shows that Brown has not been cleared to return to work and that he continues to receive workers' compensation benefits.

In arguing that Square Deal fired him once he told Square Deal he was going on leave, Brown points primarily to an email sent by Square Deal's Vice President of Sales and Marketing,

Larry Ranke, to the staff, on March 22, 2017. Ranke stated: "After more than 20 years of service to Square Deal, Marshall Brown has left his position as Warehouse Manager at our Sterling Heights location. Marshall takes his leave due to medical complications. . . . Of course, we all wish Marshall the best in his next stage of life." The email went on to identify the employee who would replace Brown as Warehouse Manager.

At most, when viewed in a light most favorable to Brown, this email indicates that Brown was removed from the position of Warehouse Manager. It does not state that Brown had been fired, or that he no longer worked for the company in any capacity. In fact, it is consistent with the narrative described above—that shortly before providing notice to Square Deal that he had to go on medical leave, Brown left the Warehouse Manager position to become a part-time employee because he was no longer able to fulfill the physical duties of Warehouse Manager. It does not, contrary to Brown's assertion, create a genuine issue of material fact as to whether Square Deal terminated Brown's employment, in light of the other evidence showing that Brown remains an employee of the company and is on leave receiving workers' compensation benefits.

Brown has not raised a genuine issue of material fact regarding whether Square Deal terminated his employment in response to his request for medical leave. Brown has, therefore, failed to show that the district court erred by granting summary judgment in favor of Square Deal on his FMLA claims.

*Michigan Worker's Disability Compensation Act*. Brown's claim under the MWDCA fails for the same reason. The MWDCA provides that an employer "shall not discharge an employee or in any manner discriminate against an employee . . . because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act." Mich. Comp. Laws § 418.301(13). To establish a claim of retaliation under the MWDCA, Brown had to show, among

other things, that Square Deal took an adverse employment action against him. *See Cuddington v. United Health Servs., Inc.*, 826 N.W.2d 519, 525 (Mich. Ct. App. 2012). According to Brown, that adverse employment action was the termination of his employment. *See* Appellant Br. at 26 (stating that "[t]he lower court committed reversible error by finding as fact that Plaintiff was not terminated and did not suffer an adverse employment action in support of his WCDA retaliation claim"). But, as discussed above, Brown has not shown that Square Deal terminated his employment with the company. The district court did not err by granting summary judgment in favor of Square Deal on Brown's MWDCA claim.

* * *

For these reasons, we AFFIRM the judgment of the district court in favor of Square Deal.