NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0536n.06

No. 20-3172

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Sep 16, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MELANIE BECKEMEYER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| GELCO CORPORATION, dba Element Fleet | ) | COURT FOR THE |
| Management, | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellee. | ) | |
| | ) | |

Before: SUHRHEINRICH, LARSEN, and READLER, Circuit Judges.

LARSEN, Circuit Judge. As part of her employment with Avanir Pharmaceuticals, Melanie Beckemeyer had use of a company car. Avanir contracted with Gelco Corporation to provide vehicles to Avanir's employees. According to Beckemeyer, the SUV she received from Gelco was contaminated with mold or some other environmental hazard, which caused her to develop health conditions. So, invoking the district court's diversity jurisdiction, she sued Gelco raising claims of breach of contract and negligence. The district court dismissed both claims. We AFFIRM.

I.

Gelco provides fleet vehicles for employers such as Avanir. As part of its contract with Avanir, Gelco agreed to assist Avanir's employees with the maintenance of their vehicles. Beckemeyer's predecessor at Avanir had previously used the Toyota RAV4 involved in this case.

In March 2016, at Gelco's request, Professional Automotive Relocation Services (PARS) retrieved the Toyota and stored it. The SUV was dirty, and the floorboards and passenger seat were wet. PARS did a "light detail" of the Toyota, including shampooing the wet areas and extracting any water. The Toyota then sat on the lot for almost two months before it was delivered to Beckemeyer in early May 2016.

When Beckemeyer got the Toyota, she noticed that it was dirty. She also noticed a notation on the bill of lading regarding a water leak. According to Beckemeyer, she "has a hypersensitivity to environmental allergens and previously had an experience with a vehicle which had a musty smell coming through the air conditioner that made her ill." Appellant Br. at 14. So she immediately contacted Gelco, who told her to call its maintenance department to get the leak repaired. Beckemeyer, however, rarely drove the Toyota for two months, due to an intensive home study required by Avanir that occupied her time. But when she drove the car on June 20, 2016, she became dizzy; so she once again called Gelco to get the leak repaired. Gelco told Beckemeyer to take the car to a dealership for repair; Beckemeyer chose Performance Toyota.

Performance Toyota inspected the vehicle and repaired a variety of problems; most were related to general maintenance, but Performance Toyota also repaired a damaged windshield washer line that went from under the hood, along the windshield, through the roof on the passenger side of the vehicle, and to the rear window. Before she took the car, Beckemeyer requested a detailed cleaning. Gelco did not authorize the detailing, so Beckemeyer paid for it out of pocket and later sought reimbursement from Avanir.

The problems with the Toyota continued, and on September 23, 2016, Beckemeyer asked Avanir to get her a new vehicle, informing Avanir that the Toyota had caused her severe allergic

reactions and multiple visits to the doctor. Avanir immediately authorized Beckemeyer to use a rental car. Beckemeyer never talked to Gelco again about the Toyota, nor did she drive it again.

Beckemeyer then sued Gelco, raising negligence and breach of contract claims. Gelco filed motions for judgment on the pleadings and summary judgment. The district court granted judgment on the pleadings on the breach of contract claim and summary judgment on the negligence claim. Beckemeyer appeals, challenging only the dismissal of her negligence claim.

## II.

Beckemeyer's negligence claim requires us to apply Ohio law. The elements of a negligence claim under Ohio law are "(1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach." *Wallace v. Ohio Dep't of Com.*, 773 N.E.2d 1018, 1025–26 (Ohio 2002).

First some housekeeping on the duty element. "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Id.* at 1026 (citation omitted). Here, the district court found that Gelco voluntarily assumed a duty pursuant to § 323 of the Restatement (Second) of Torts. That section provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> > (a) his failure to exercise such care increases the risk of such harm, or
> > (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323. The district court found that, although Gelco voluntarily assumed a duty pursuant to § 323, it exercised reasonable care in performing that duty and that, in

any event, Beckemeyer could not show that Gelco's performance increased the risk of harm or that she suffered the harm because she relied on Gelco's performance.

Beckemeyer now says that the district court used the wrong section of the Restatement—the district court should have used § 324A of the Restatement (Second) of Torts, which Beckemeyer says "provides an additional ground for imposing liability: when the defendant undertakes to perform a duty owed by the other to the third person."[1] Appellant Br. at 21.

Beckemeyer's argument comes too late. A survey of the proceedings in the district court shows why. In the early stages of the case, Gelco moved for judgment on the pleadings. The district court allowed Beckemeyer's negligence claim to proceed and, in so doing, indicated that any duty owed by Gelco to Beckemeyer arose under § 323. Gelco then filed a motion for summary judgment, in which it analyzed the negligence claim under § 323. In her response, Beckemeyer raised no challenge to the premise that her negligence claim was based on § 323. She in fact made no mention of § 323 or § 324A, or even any law at all related to the question of duty. Unsurprisingly then, the district court proceeded under § 323.

Because Beckemeyer failed to present her § 324A argument to the district court, she has forfeited it. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). "It is well-settled that this court's 'function is to review the case presented to the district court, rather than a

---

[1] Section 324A of the Restatement (Second) of Torts provides in full:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>> (a) his failure to exercise reasonable care increases the risk of such harm, or
>> (b) he has undertaken to perform a duty owed by the other to the third person, or
>> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

better case fashioned after a[n] . . . unfavorable order.'" *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (alterations in original) (quoting *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005)). We therefore proceed under § 323.

What is the duty? The district court determined that Gelco "voluntarily assumed a duty to provide [Beckemeyer] with assistance in the maintenance of the Toyota RAV4 assigned to her." The parties do not challenge the existence or scope of the duty on appeal.

For Gelco to be liable under § 323, Beckemeyer must show that Gelco's failure to exercise reasonable care in assisting her with the maintenance of the Toyota "either (a) increased the risk of harm, or (b) induced detrimental reliance." *Wissel v. Ohio High Sch. Athletic Ass'n*, 605 N.E.2d 458, 465 (Ohio Ct. App. 1992). Because Beckemeyer only cursorily mentions detrimental reliance in her brief on appeal, we focus on whether Gelco failed to exercise reasonable care in a way that increased the risk of harm to Beckemeyer.

Here, Beckemeyer cannot show that Gelco's performance increased the risk of harm. *Wissel* tells us "that the increase in the risk of harm required is not simply that which occurs when a person fails to do something that he or she reasonably should have [done]." *Id.* "[T]he risk of harm to the beneficiary of a service is always greater when the service is performed without due care." *Id.* More is required for § 323 liability. Section 323 liability occurs "only when the defendant's actions increased the risk of harm to the plaintiff relative to the risk that would have existed had the defendant never provided the services initially." *Id.* (quoting *Turre v. Gov't of the Virgin Is., Virgin Is. Water & Power Auth.*, 938 F.2d 427, 432 (3d Cir. 1991)). Beckemeyer must show that Gelco's "negligent performance . . . somehow put [her] in a worse situation than if [Gelco] had never begun the performance." *Id.* (quoting *Turre*, 938 F.2d at 432).

Beckemeyer cannot show this. Gelco's role, in fact, was quite limited. When Beckemeyer alerted Gelco to the possibility of a problem with the Toyota, Gelco told her to take the car to a dealership for maintenance. Beckemeyer had her choice of dealerships, and she chose Performance Toyota. Performance Toyota did a thorough inspection of the Toyota and fixed many issues, including repairing the damaged washer line that was under the hood and flushing out the HVAC system to take care of an odor in the Toyota. Beckemeyer got the Toyota back from the dealership in early July. Although she continued to have problems with the Toyota, she never contacted Gelco again.

Gelco's performance can be summarized as authorizing Beckemeyer to choose who would do a full inspection and repair of the Toyota. She chose Performance Toyota. Gelco's performance, then, is hardly one that could be said to have increased the risk of harm to Beckemeyer in a way that would support civil liability.

But Beckemeyer counters by pointing to three instances in which Gelco allegedly failed to act appropriately and thus increased her risk of harm. She says that Gelco "had actual—or at least constructive—knowledge of the hazard" through its agent at PARS before Beckemeyer called Gelco on May 6, 2016. Appellant Br. at 25. The agents' negligence in caring for the Toyota while it remained in storage, says Beckemeyer, should be attributed to Gelco. But this argument has no bearing on Gelco's liability under § 323 because it goes beyond the scope of the duty assumed by Gelco. The district court found only that Gelco had assumed a duty to assist Beckemeyer with the maintenance of the Toyota. Beckemeyer does not challenge the district court's conclusion in this respect, so what the purported agents of Gelco did before Beckemeyer received the Toyota has no bearing on whether Gelco breached its duty.

Even so, says Beckemeyer, if Gelco had knowledge of the water damage found during storage, it should have passed that information to Beckemeyer and the dealership once Beckemeyer complained about the car. Maybe so, although perhaps PARS (and therefore Gelco, under Beckemeyer's agency theory) thought it had fixed the problem by hiring a detailing company that shampooed the wet areas and extracted any water. In any event, for Gelco to be liable, its performance must have put Beckemeyer "in a worse situation than if [Gelco] had never begun the performance." *Wissel*, 605 N.E.2d at 465. Regardless of what Gelco did, Beckemeyer told Performance Toyota about the possible water leak. And Gelco, through Beckemeyer, authorized Performance Toyota to do a full inspection of the vehicle. Gelco's performance did not put Beckemeyer in a worse position than if Gelco had never been involved.

Beckemeyer also says that once the dealership found another water leak in the Toyota, it declined to "even authorize a detailing of the vehicle, placing Beckemeyer in the position of deciding whether to pay for it herself." Appellant Br. at 27. But for this to matter, Beckemeyer would have to show that it increased her risk of harm. *Wissel*, 605 N.E.2d at 465. She cannot. Days after Gelco rejected the detailing request, Beckemeyer obtained her own full detailing of the car. The detailing made no difference. Beckemeyer continued to have health problems when driving the SUV. Detailing or no detailing, the alleged harm remained the same.

Beckemeyer has not shown error in the district court's decision to grant Gelco summary judgment on her § 323 liability claim.

* * *

We AFFIRM.