NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0456n.06
No. 20-2241

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MARGARET EVOLA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Oct 07, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| HENRY FORD MACOMB HOSPITAL, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |

Before: BATCHELDER, LARSEN, and READLER, Circuit Judges.

LARSEN, Circuit Judge. Margaret Evola slipped on a wet floor while walking in a hallway at Henry Ford Macomb Hospital (the Hospital). She sued the Hospital for her injuries based on a premises-liability theory under Michigan law. The district court granted summary judgment to the Hospital. We AFFIRM.

I.

Evola visited her mother, who had been in a car accident, in the intensive care unit on the second floor of the Hospital. She arrived at night with her service dog. Shortly after arriving and after spending some time with her mother, Evola took her dog outside. Evola went back into the Hospital, but she could not remember the way back to her mother's room.

Evola took an elevator to the second floor. When she got off the elevator, she "was still lost." She began walking down the hall but did not notice anything familiar. So she turned around and walked back to the elevator. She passed the elevator and immediately noticed down the

hallway a "housekeeping cart straight at the end of the corridor and [a] gal . . . putting her mop back in her bucket." Evola did not notice any water, moisture, or pooling on the floor, but she noticed that "[i]t was quite shiny." Although there were no signs indicating a recently mopped floor, Evola deduced as much because her "shoes were sticking" to the floor and her shoes were making "like a squeaking noise, you know, that spongy sound." Accordingly, she "tr[ied] to walk very carefully knowing that [the worker had] just mopped." Despite the evidently wet floor and despite not knowing whether she was headed toward her mother's room, Evola proceeded down the hall.

Evola, who was carrying her service dog at the time, fell to the floor about twenty to thirty steps past the elevator. She recalled that "[b]ecause [the floor] was wet" and her rubber shoes were wet, her "shoe got stuck" and she "slipped forward" and fell to the ground. She testified that she was "being very careful" and going "very slow" when she fell because she "always walk[s] on [her] tiptoes on the floors that are wet." When she was on the ground, Evola noticed that the floor was wet. Evola suffered serious injuries from the fall.

Invoking the court's diversity jurisdiction, Evola sued the Hospital in federal court for negligence under Michigan law on a premises-liability theory. The Hospital moved for summary judgment. The district court granted the motion, based on its conclusion that the wet floor was open and obvious and that there were no special aspects to the wet floor that made it unreasonably dangerous, thereby precluding liability under Michigan law. Evola now appeals.

## II.

We review the district court's summary judgment decision de novo. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018). "[S]ummary judgment is warranted only if 'there is no genuine issue as to any material fact' and 'the movant is entitled

to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a) and *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).

To prevail on her premises-liability claim under Michigan law, Evola must establish that the Hospital owed her a duty of care. *Est. of Livings v. Sage's Inv. Grp., LLC*, __ N.W.2d __, 2021 WL 2672308, at *5 (Mich. June 30, 2021). The parties do not dispute that the Hospital (the premises owner and invitor) owed Evola (an invitee) "a duty to exercise reasonable care to protect [her] from dangerous conditions on the land." *Id.* This duty, however, "does not extend to dangerous conditions that are open and obvious." *Id.*

A condition is open and obvious if it would be "reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94–95 (Mich. 2012). Evola contends that clear liquids on a floor are generally not open and obvious hazards under Michigan law. We need not engage that question, however, because Evola had actual knowledge of the wet floor and its dangers. The Michigan Supreme Court has explained that "an invitor owes no duty to protect or warn the invitee" either "where the dangers are known to the invitee" or where they "are so obvious that the invitee might reasonably be expected to discover them." *Est. of Livings*, 2021 WL 2672308, at *5 (quoting *Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 681 (Mich. 1992)); *see also Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 386 (Mich. 2001).

Evola's testimony shows that she knew of the condition and its dangers. Evola knew that the floor was wet. She deduced as much from the housekeeping cart, the worker with a mop, the shiny floors, and the fact that her "shoes were sticking" to the floor and making "a squeaking noise, you know, that spongy sound." Accordingly, she "tr[ied] to walk very carefully knowing that [the

worker had] just mopped." Thus, Evola identified the wet floor and its dangers and adjusted her stride accordingly. In short, Evola knew of the condition.[1]

Case over? Not quite. In some circumstances, "the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee." *Lugo*, 629 N.W.2d at 386 (quoting *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 187 (Mich. 1995)). Where "special aspects" make the risk of harm from an obvious or known condition unreasonable, "the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Id.* The Michigan Supreme Court has identified two special aspects: "when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*." *Est. of Livings*, 2021 WL 2672308, at *5 (quoting *Hoffner*, 821 N.W.2d at 96).

Evola argues only that the danger was effectively unavoidable. According to the Michigan Supreme Court, "Unavoidability is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome." *Hoffner*, 821 N.W.2d at 99. The hazard "must be unavoidable or inescapable *in effect* or *for all practical purposes*." *Id.* As such, "the standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard," so "situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id.*

---

[1] Evola suggests that the district court erred by mischaracterizing the floor as a "wet floor"; she says, "it was not 'wetness' that caused her fall but rather the unknown spongy, sticky clear liquid residue over the entire corridor floor surface." This is a curious assertion given that, in her response to the Hospital's motion for summary judgment, Evola referred to the hazard as a "wet floor" no fewer than a dozen times. We "review the case presented to the district court, rather than a better case fashioned after a[n] . . . unfavorable order.'" *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (alterations in original) (quoting *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005)). In any event, whether the floor was covered in water or something else, Evola knew the floor was hazardous.

Evola was not compelled to confront the condition. In fact, she did not know if there was any reason to confront the condition at all. She testified that she was lost and that she did not know whether her mother's room was down the hallway beyond the wet floor. While she testified that there was no other route to take, she could have returned to the elevators and sought assistance from hospital staff on the first floor. She "was not 'trapped' in the building or compelled by extenuating circumstances with no choice but to traverse" the wet floor. *Id.* at 101. So, according to Michigan law, "the danger was not unavoidable, or even effectively so." *Id.* (emphasis omitted).

Evola's only response is that the Hospital floor plan shows that she was on the right track because she had to pass down the wet hallway to get to her mother's room; the only other route on the second floor was restricted access. But she did not know that at the time. She admitted she was lost. Had she returned to the elevator in search of assistance, hospital staff might have directed or escorted her through a different route because of the floor. Or they might have asked her to wait until the floor dried or dried it themselves. Evola must show that traversing the wet floor at that time was "inescapable." *Id.* at 99. She cannot do so, and as such, no special aspects made the wet floor unreasonably dangerous.

\* \* \*

We AFFIRM.