RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0039p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DWAIN DAVID BARTON,

　　　　　　*Plaintiff-Appellant*,

*v.*

OFFICER MARTIN, et al.,

　　　　　　*Defendants*,

OFFICER DEAN VANN,

　　　　　　*Defendant-Appellee*.

No. 18-1614

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-13898—George Caram Steeh, III, District Judge.

Argued:  May 8, 2019

Decided and Filed:  February 7, 2020

Before:  SILER, GIBBONS and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Hugh M. Davis, CONSTITUTIONAL LITIGATION ASSOCIATES, P.C., Detroit, Michigan, for Appellant.  Julie McCann O'Connor, O'CONNOR, DEGRAZIA, TAMM & O'CONNOR, P.C., Bloomfield Hills, Michigan, for Appellee.  **ON BRIEF:**  Hugh M. Davis, Cynthia Heenan, CONSTITUTIONAL LITIGATION ASSOCIATES, P.C., Detroit, Michigan, for Appellant.  Julie McCann O'Connor, O'CONNOR, DEGRAZIA, TAMM & O'CONNOR, P.C., Bloomfield Hills, Michigan, for Appellee.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge.  Dwain Barton's neighbor, Jill Porter, falsely reported to police that Barton had shot a stray cat in his backyard in Lincoln Park, Michigan. Shortly thereafter, police officers, without a warrant for entry or arrest, forcibly entered Barton's home and arrested him for animal cruelty.  Barton was brought to the police station, booked, and then released on a $500 cash bond three hours later.  Barton subsequently sued the officers under 42 U.S.C. § 1983, alleging violations of the Fourth Amendment for illegal entry into his home, arrest and prosecution without probable cause, and excessive force, as well as First Amendment retaliation.  The district court granted summary judgment for Officer Dean Vann, one of the officers at the scene.  The court held that Vann was entitled to qualified immunity on the illegal entry, wrongful arrest, and retaliatory arrest claim, and that Barton failed to raise a genuine issue of material fact on the excessive force claim (presumably entitling Vann to judgment as a matter of law).  Barton challenges the district court's grant of summary judgment in favor of Vann on the illegal entry, wrongful arrest, and excessive force claims.  We reverse.

I.

On November 3, 2014, Dwain Barton fixed his backyard door while his wife washed dishes and his daughter jumped on the trampoline in the backyard of their Lincoln Park, Michigan home.  Around noon, Barton's wife yelled to him "Hey, babe, [our daughter] is being attacked in the backyard by a cat.  It's clawing her."  DE 28-3, Barton Dep. Tr., PageID 178. Barton opened the door and saw a "huge" cat, "sitting there[,] clawing, and biting at [his] daughter."  *Id.*  Intending to "make a loud noise and to scare it away," Barton grabbed a nearby BB gun and shot at one of the trampoline's legs, about five feet away from the cat.  *Id.*  Still holding the BB gun in his own backyard, Barton yelled to his neighbor, Jill Porter, who stood in her backyard three doors down.

Porter routinely fed stray cats.  She habitually left food scraps outside, which, according to Barton, resulted in forty to fifty stray cats "invading the entire block."  *Id.* at 177.  As a result,

Barton had complained to the Lincoln Park animal control in the past.  On the day in question, Barton said, "Hey, Jill, the next cat that I see in my yard will be a dead one." *Id.* at 178.  Barton then put the BB gun away, made sure his daughter was okay, and returned to fixing his door.

Porter called 911.  She provided her name and address, and said that Barton had told her that "just to inform you, your grey cat just peed on my furniture and he got shot in the head." DE 28-2, Mot. for Summ. J., 911 Audio, 0:40–1:05.  She said she did not "know if it was with a BB gun or what." *Id.*  When the dispatcher asked whether Porter had seen the injured cat, she said she had not.  The dispatcher then said that since Porter had "no proof" that Barton had shot a cat, there was nothing for the police to do.  *Id.* at 2:09–2:16.  In response, Porter repeated that Barton told her that he "just shot [her] grey cat because he peed on [his] furniture." *Id.* at 2:17–2:34.  She then clarified, however, that the cat could not have actually been hers, because she had just seen her cat, so it must have been a different cat.  Porter described Barton as a bald, white male with glasses, who was about thirty-four years old.  The dispatcher ended the call by saying she would send someone to talk to Porter.

The dispatcher then relayed the following information over radio: a woman had called to say that her neighbor was "shooting cats," that she wanted to speak to someone about this, and that she was not sure what type of weapon was used.  The dispatcher also reported that the woman had not seen any injured or wounded animals.

About forty minutes after the initial BB gun incident, Animal Control Officer Adam Manchester arrived at Barton's door; they spoke to each other through a screen.  Manchester identified himself and asked Barton to come outside to speak with him.  When Barton asked whether he was suspected of committing a crime, Manchester responded, "No, you are not." DE 28-3, Barton Dep. Tr., PageID 180; DE 28-15, Jennifer Barton Dep. Tr., PageID 278.  Barton refused to come outside or provide identification.  He denied shooting at a cat and instead relayed that he had shot only at a trampoline pole with a BB gun to scare the cat away.  In his written report following the incident, however, Manchester, stated that Barton told him that he "shot [a cat] in the head with a BB[] gun." DE 28-6, Reporting Officer Narrative, PageID 221. Manchester nonetheless testified that he saw neither weapons on or near Barton nor injured cats at the scene.

Manchester retreated to his car and radioed the police department.  He relayed that "the [suspect] [was] not giving [him] information" and that he "admitted to shooting animals."  DE 28-2, Mot. for Summ. J., Dispatch Radio 10.36.04, 0:08–0:22.  About ten minutes later, four police cars, with two officers in each car, showed up at Barton's home.  The officers pulled "what looked like assault rifles" out of their trunks and "surrounded" Barton's house.  DE 28-3, Barton Dep. Tr., PageID 182.  While the officers surrounded Barton's home, Manchester again asked Barton for his identification.  Barton passed his identification through the screen door to his mother-in-law,[1] who was on his porch, to hand to the officers.

Moments later, "fearing that [Barton] was grabbing a gun," DE 28-7, Vann Dep. Tr., PageID 228, Vann[2] "ripped [their] screen door off [and barged] into [their] house."  DE 28-15, Jennifer Barton Dep. Tr., PageID 282.  Vann testified that when he entered Barton's home, he saw Barton "standing in the kitchen" and "at that point," did not perceive a threat from him because Barton did not have "anything in his hands" and was not "in control of any type of a weapon."  DE 28-7, Vann Dep. Tr., PageID 229.  Nonetheless, Vann "threw [Barton] up against the counter like a linebacker."  DE 28-15, Jennifer Barton Dep. Tr., PageID 282.  Barton explained that Vann "lifted [him] up with his elbows underneath [his] body and [his] arm and literally picked [him] up and slammed [him] up against [the] kitchen cupboards, at which point all of the other officers, like ants, followed in, and at which point they all surrounded [him]."  DE 28-3, Barton Dep. Tr., PageID 186.

Although both Barton and his wife testified that Barton never resisted arrest, Vann then told Barton to "stop resisting" and to place his hands behind his back because he was under arrest.  DE 28-3, Barton Dep. Tr., PageID 187; DE 28-7, Vann Dep. Tr., PageID 229.  In response, Barton stated that he could not put his hands or shoulders behind his back due to a previous shoulder injury.  Vann responded, "Oh, we'll make it fit."  DE 28-3, Barton Dep. Tr., PageID 187.  Vann then "grabbed both of [Barton's] wrists and took them both behind [his]

---

[1]It is unclear exactly who was at Barton's home on the day in question.  But Vann testified that there were multiple family members on the porch, creating "a very animated scene."  DE 28-7, Vann Dep. Tr., PageID 228.

[2]Throughout Dwain and his wife Jennifer Barton's depositions, they refer to Vann as "Dino."  This nickname presumably refers to Vann's large stature.  *See* DE 28-15, Jennifer Barton Dep. Tr., PageID 282 ("[T]he gentleman that we like to call Dino . . . the big one that looks like a steroid freak.").

back[,] . . . shoved them both together[,] and put the handcuffs on [him] as tight as he possibly could." *Id.* None of the officers involved had a warrant to enter Barton's home or to arrest him.

Vann then "shoved" Barton outside his home, down his porch steps, and into a patrol car. DE 28-3, Barton Dep. Tr., PageID 189. During the drive to the police station, Barton complained that Vann had injured his shoulder when he slammed him against the kitchen cabinets. *Id.* at 190. Upon arriving at the station, Barton was strip searched with one hand handcuffed to the wall, about three feet above his head. *Id.* He continued to tell officers that his shoulder hurt and "that [Officer Vann] had injured [him]," to which Barton was told to "shut the f*** up unless [he] want[ed] to spend the night there." *Id.* at 191. Officers told him that he was being charged with animal cruelty and issued a citation. Approximately three hours after his arrest, Barton was released on a $500 cash bond. The charge against him was later dismissed.

In November 2017, Barton filed his first amended complaint against Officers Manchester,[3] Martin, and Vann in the Eastern District of Michigan. Under 42 U.S.C. § 1983, Barton alleged violations of the Fourth Amendment for illegal entry into his home, unreasonable arrest and prosecution without probable cause, and excessive force, as well as First Amendment retaliation. He also brought Michigan state law claims for illegal search and seizure, assault and battery, false arrest and imprisonment, and malicious prosecution.

In January 2018, Vann filed a motion for summary judgment. Vann argued both that there were no constitutional violations and that, even if there were, he was entitled to qualified immunity. In response, Barton challenged the summary judgment motion and argued that Vann was not entitled to qualified immunity.

The district court granted Vann's motion for summary judgment on Barton's federal claims for illegal entry, wrongful arrest, excessive force, and retaliatory arrest. The court held that Vann was entitled to qualified immunity with respect to the illegal entry, wrongful arrest, and retaliatory arrest claims, and that Barton failed to raise a genuine issue of material fact on the excessive force claim (presumably entitling Vann to judgment as a matter of law). Declining to exercise supplemental jurisdiction, the district court then dismissed the remaining state law

---

[3]In January 2018, the district court dismissed Manchester from the lawsuit.

claims.  Barton timely appealed the district court's grant of summary judgment on the illegal entry, wrongful arrest, and excessive force claims.

II.

This court reviews a district court's grant of summary judgment on grounds of qualified immunity de novo.  *Baynes v. Cleland*, 799 F.3d 600, 606 (6th Cir. 2015).  Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citing Fed. R. Civ. P. 56(c)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a fact is "deemed material only if it might affect the outcome of the lawsuit under the governing substantive law."  *Baynes*, 799 F.3d at 607.  In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 248.  In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate.  *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009).

III.

We reverse the district court's grant of summary judgment in favor of Vann based on qualified immunity.  Based on the facts alleged and the evidence produced, viewed in the light most favorable to Barton, a reasonable juror could find that Vann violated Barton's Fourth Amendment rights to freedom from warrantless entry into his home, use of excessive force, and arrest without probable cause.  These violations were of clearly established law.  Vann, therefore, is not entitled to qualified immunity for all three federal claims.

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Created to protect government officials from interference

with their official duties, qualified immunity "is an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It allows police officers "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)) (internal quotation marks omitted). After a defending officer initially raises qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

Qualified immunity involves a two-step inquiry, and courts exercise discretion in deciding in what order to address the questions. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, viewing the facts in the light most favorable to the plaintiff, the court must determine whether the officer committed a constitutional violation. *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). Second, if there is a constitutional violation, the court must determine whether that constitutional right was clearly established at the time of the incident. *Id.* A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While there need not be "a case directly on point" for the law to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

### A.

Barton argues that the district court erred when it granted summary judgment on the basis of qualified immunity to Vann on the Fourth Amendment illegal entry claim. Vann is entitled to qualified immunity unless Barton has shown that a reasonable jury could find that Vann violated his Fourth Amendment right against warrantless entry and that the right was clearly established at the time of the violation. We hold that a reasonable jury could find that Vann's warrantless entry violated the Fourth Amendment, and that the right was clearly established. We therefore reverse the district court's grant of summary judgment on the basis of qualified immunity on the illegal entry claim.

"A police officer's entry into a home without a warrant is presumptively unconstitutional under the Fourth Amendment." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002). Indeed, warrantless entry of one's home is the "chief evil" against which the Amendment is designed to guard. *United States v. U.S. District Court*, 407 U.S. 297, 313 (1972). When "exigent circumstances" exist, however, warrantless entries are permissible. *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992). Exigent circumstances exist when a reasonable officer could believe that there are "'real immediate and serious consequences' that would certainly occur were a police officer to 'postpone action to get a warrant.'" *Ewolski*, 287 F.3d at 501 (quoting *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir. 1994)). Thus, exigent circumstances may exist when "the suspect represent[s] an immediate threat to the arresting officers and public." *Hancock*, 958 F.2d at 1375.

Here, Barton argues that "under [his] version [of the facts], there was no exigency that could excuse the officers from obtaining a warrant before entering his home." CA6 R. 20, Barton Br., at 23. We agree. Barton does not dispute that Vann arrived at his home under the (false) belief that Barton had shot a stray cat. Barton also does not dispute that he declined to come out of his house or that the presence of multiple family members on the porch created "a very animated scene." DE 28-7, Vann Dep. Tr., PageID 228. But according to Barton, by the time Vann entered his home, Barton had told Manchester that he had only shot at a trampoline pole with a BB gun. Barton also testified that he had complied with Manchester's directions by passing his identification through the screen door. Thus, the relevant inquiry is whether a suspect who possibly shot a stray cat, but has denied doing so, and is inside his home but cooperating with police, "represent[s] an immediate threat to the arresting officers and public," *Hancock*, 958 F.2d at 1375, such that there are "'real immediate and serious consequences' that would certainly occur were a police officer to 'postpone [] action to get a warrant.'" *Ewolski*, 287 F.3d at 501 (quoting *O'Brien*, 23 F.3d at 997).

Viewing these facts from a reasonable officer's perspective at the time of the incident, and drawing all inferences in favor of Barton, see *id.* at 500–02, the facts fall short of showing that exigent circumstances precluded the officers from seeking a warrant before entering Barton's home as a matter of law. "Evidence that firearms are within a residence, by itself, is not

sufficient to create an exigency . . . ." *United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996). Rather, the government must show that the police "possessed information that the suspect was armed and likely to use a weapon or become violent." *Id.* Thus, officers responding to a shots-fired report must have additional evidence of an immediate threat before entering a home without a warrant. *See, e.g.*, *Hancock*, 958 F.2d at 1375.

Without additional evidence of a threat against the police or bystanders, a report of an armed suspect inside his home does not justify warrantless entry. *See O'Brien*, 23 F.3d at 997–98 (finding no immediate threat of danger where armed suspect retreated to his home and did not make any verbal threats toward officers or point gun at anyone outside home); *United States v. Morgan*, 743 F.2d 1158, 1163 (6th Cir. 1984) (finding no immediate threat of danger where police received report of suspect shooting into a clay bank at park, heard gunshots, saw suspect load guns into car, saw suspect bring guns into home, and suspect later raised gun before complying with police's order to put it down); *cf. Causey v. City of Bay City*, 442 F.3d 524, 529–31 (6th Cir. 2006) (finding immediate threat of danger when officers relied on information that gunshots were fired from residence, that no one had left or entered since the gunshots, and that no one answered the door); *Dickerson v. McClellan*, 101 F.3d 1151, 1159–60 (6th Cir. 1996) (finding immediate threat of danger to potential victims inside house where police received report of nine shots fired at residence at 1:00 a.m. and heard male voice screaming when they approached front door).

Here, the only threat Barton made was that "the next time [he saw] a cat in [his] yard attacking [his] children, it [would] be a dead one." DE 28-3, Barton Dep. Tr., PageID 177. And when Manchester questioned Barton about the incident, prior to Vann's warrantless entry, Barton told Manchester that he had shot at a trampoline pole with a BB gun, not the marauding cat. Vann never heard Barton threaten the officers or any neighbors. *See O'Brien*, 23 F.3d at 997. Vann never observed Barton with a weapon. *Cf. Morgan*, 743 F.2d at 1163. Vann never suspected that someone inside the house was in peril. *Cf. Causey*, 442 F.3d at 524. And Vann did not see any evidence of an injured animal.

As the police must have more than just a shots-fired report to justify warrantless entry into one's home, Vann's belief that Barton had shot at a stray cat did not indicate "'real

immediate and serious consequences' that would certainly occur were a police officer to 'postpone action to get a warrant.'" *Ewolski*, 287 F.3d at 501 (quoting *O'Brien*, 23 F.3d at 997). Evidence that someone has shot at a stray cat does not indicate willingness to shoot at a human being, and there was no indication that Barton was shooting at strays inside his home; thus, Vann's belief that there was an exigency that precluded procuring a warrant before entering Barton's home was unreasonable. Taking all inferences in Barton's favor, a reasonable jury could therefore find that Vann's warrantless entry into Barton's home violated the Fourth Amendment's prohibition against unreasonable searches.

Moreover, it was clearly established that warrantless entry into a home without an exception to the warrant requirement violated clearly established law. *See Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) ("Having determined that there was a constitutional violation, the question now becomes whether the Fourth Amendment right violated by Defendants was clearly established."). "[I]f there can be reasonable disagreement" about whether the officer's conduct was unlawful based on the law at the time of the incident, "then the right cannot be considered 'clearly established.'" *Id.* at 701. The plaintiff bears the burden of showing that a right was clearly established at the time of an alleged injury. *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). Here, Barton has met that burden.

Existing precedent has placed the constitutional question at issue "beyond debate." *Ashcroft*, 536 U.S. at 741. It has long been established that an officer may not enter a home absent a warrant or an exception to the warrant requirement. *See Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984); *Payton v. New York*, 445 U.S. 573, 585–86 (1980); *Coffey v. Carroll*, 933 F.3d 577, 587 (6th Cir. 2019); *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005); *Ewolski*, 287 F.3d at 501. Barton's retreat into his home was not an exigent circumstance posing a risk to the safety of the officers or bystanders. *See O'Brien*, 23 F.3d at 997–98. The bedrock Fourth Amendment principles announced in *Payton* and *Welsh* demonstrate that Vann's forced warrantless entry into Barton's home was presumptively unreasonable, and Vann had no objectively reasonable basis for believing the warrantless entry was supported by exigent circumstances. Therefore, Vann is not entitled to qualified immunity on the unlawful entry claim.

B.

Barton's next § 1983 claim is that Vann arrested him without probable cause. Whether or not the district court properly granted summary judgment to Vann on the basis of qualified immunity turns on whether a reasonable jury could find that Vann violated Barton's Fourth Amendment right to freedom from arrest without probable cause, and if so, whether it could find that the violation was of clearly established law at the time of the incident. We conclude that a reasonable jury could find that Vann lacked probable cause to arrest Barton and that the right to be free from arrest without probable cause was clearly established. We therefore reverse the district court's grant of summary judgment on the basis of qualified immunity with respect to the wrongful arrest claim.

A warrantless arrest is reasonable under the Fourth Amendment if the arresting officer has probable cause for the arrest. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)). But under § 1983, an officer "is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of . . . the information possessed at the time by the arresting agent." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Thus, "even if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful." *Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011).

An officer has probable cause "when, at the moment the officer seeks the arrest, 'the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Under a totality-of-the-circumstances analysis, "probable cause exists only when the police officer 'discovers reasonably reliable information that the suspect has committed a crime.'" *Courtright v. City of Battle Creek*, 839

F.3d 513, 521 (6th Cir. 2016) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). "A probable cause determination . . . must take account of 'both the inculpatory *and* exculpatory evidence' then within the knowledge of the arresting officer" at the time of the arrest. *Id.* (quoting *Wesley*, 779 F.3d at 429). An officer "cannot simply turn a blind eye toward potentially exculpatory evidence." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (quoting *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999)).

A phone call reporting criminal activity, without any corroborating information, does not provide probable cause for an arrest. *Courtright*, 839 F.3d at 522; *see also Wesley*, 779 F.3d at 429–30; *United States v. McClain*, 444 F.3d 556, 563 (6th Cir. 2005); *Logsdon*, 492 F.3d at 341–42. Information from a caller that is not an eyewitness to the events lacks indicia of trustworthiness and reliability. *Courtright*, 839 F.3d at 522.

Here, taking all factual inferences in favor of Barton and viewing the information possessed by Vann at the time of the arrest, a reasonable jury could find that Vann lacked probable cause to arrest Barton for animal cruelty under Michigan law.[4] Barton's neighbor called to report Barton was shooting at cats. Barton's neighbor was not an eyewitness to the attack on Barton's daughter or Barton's shooting his BB gun at the cat; rather, she called 911 after her confrontation with Barton. Manchester responded to the 911 call and, after speaking with Barton, relayed over police radio that Barton admitted to shooting animals. Upon arriving at Barton's home, Vann did not see a weapon or an injured cat. Nor did any other officer at the scene see any physical evidence of wrongdoing. Additionally, Vann's interaction with Barton did not lead to further corroboration of the neighbor's call prior to the arrest. And, taking Barton's story as true, before Barton was arrested, he denied the allegation that he was shooting at cats and instead told Vann that he had only shot his BB gun at a trampoline pole. Viewing the evidence in Barton's favor, the neighbor's call, by itself without further corroborating evidence, was not enough to establish probable cause for arrest. Based on the information Vann had at the time, including the exculpatory statement offered by Barton, no reasonable officer would have concluded that there was probable cause for arrest.

---

[4]Michigan law prohibits someone from knowingly or recklessly "kill[ing], tortur[ing], mutilat[ing], maim[ing] or disfigur[ing] an animal" without "just cause." Mich. Comp. Laws § 750.50b(2).

Vann's conduct also violated clearly established law.  It is well settled that the Fourth and Fourteenth Amendments require probable cause to justify arresting an individual.  *See, e.g.*, *Beck v. Ohio,* 379 U.S. 89, 91 (1964); *Courtright*, 839 F.3d at 520 ("The constitutional right to 'freedom from arrest in the absence of probable cause' is clearly established within our circuit."); *Parsons v. City of Pontiac*, 533 F.3d 492, 504 (6th Cir. 2008) ("The law was therefore clearly established that arrests without probable cause violated the Constitution at the time of [the plaintiff's] arrest in 2004."); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005) ("It is beyond doubt that in 2001 'the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual.").  More specifically, it was clearly established that a non-eyewitness neighbor's call reporting criminal activity without further corroborating information does not provide probable cause for an arrest.  *Courtright*, 839 F.3d at 521; *McClain*, 444 F.3d at 562–63.  We therefore reverse the district court's grant of summary judgment on the basis that Vann is not entitled to qualified immunity on the wrongful arrest claim.

C.

Barton argues that the district court erred in granting summary judgment to Vann on the excessive force claim.  To find Vann entitled to qualified immunity, we must find that Vann's use of force under the circumstances was objectively reasonable.  The district court granted summary judgment for Vann because it found that Barton failed to raise a genuine issue of material fact (presumably entitling Vann to judgment as a matter of law).  Although the district court analyzed the excessive force claim under the broader umbrella of qualified immunity, see DE 39, Order, PageID 491–92 ("The court considers each claim below [with respect to qualified immunity]."), it did not reach an explicit holding regarding whether, in light of finding no genuine issues of material fact, Vann was entitled to summary judgment on the basis of qualified immunity as a matter of law.

Looking to the facts and circumstances of the present case, Barton has presented sufficient evidence to create a genuine issue of material fact as to whether Vann's use of force was reasonable.  "A reviewing court analyzes the subject event in segments when assessing the

reasonableness of a police officer's actions." *Morrison*, 583 F.3d at 401. Thus, we make separate qualified immunity determinations for each of the two grounds offered by Barton for excessive force: (1) Vann's picking up Barton and slamming him against the kitchen cupboard and wrenching his arms behind his back to handcuff him; and (2) Vann's throwing Barton down the front porch steps while he was handcuffed. Vann is not entitled to qualified immunity on either excessive force claim.

1.

The Fourth Amendment prohibits the use of excessive force during arrest. *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016). Barton contends that Vann "lifted [him] up with his elbows underneath [his] body and [his] arm and literally picked [him] up and slammed [him] against [their] kitchen cupboards." DE 28-3, Barton Dep. Tr., PageID 186. He also claims that Vann "wrenched [his] arms behind his back to handcuff him in response to [his] complaint that he wasn't able to put his arms behind his back," CA6 R. 20, Barton Br., at 39. Barton alleges that he "suffered physical injuries to his wrist from overly tight handcuffs." DE 22, Am. Compl., PageID 90. He testified that Vann "grabbed both of [his] wrists and took them both behind [his] back and literally just shoved them both together and put the handcuffs on [him] as tight as he possibly could" and that, as a result, he was "cut around both of [his] wrists for several days after." DE 28-3, Barton Dep. Tr., PageID 187.

Whether an officer exerts excessive force is determined under an "objective reasonableness" standard. *Morrison*, 583 F.3d at 401 (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)). In analyzing objective reasonableness, "courts must balance the consequences to the individual against the government's interests in effecting the seizure," *Getz*, 833 F.3d at 652 (quoting *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)), and consider the "facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007). To determine the objective reasonableness of an officer's use of force, we "pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004) (quoting

*Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)) (finding that throwing the plaintiff into a wall and forcibly handcuffing her was unreasonable where the crime was a minor offense, the plaintiff posed no apparent threat, and the plaintiff complied with the officers' instructions). In applying these considerations to the facts at hand, it would be clear to a reasonable officer that the amount of force used by Vann against Barton was unlawful.

First, Barton was being arrested for animal cruelty, not a crime that would justify the amount of force used here. It was contested as to whether Barton shot the cat, and even if he did, whether he would have been justified in doing so given the attack on his daughter. There was no threat to human safety from Barton's actions.

Second, Barton did not pose an immediate threat to the safety of the officers or others. Vann testified that although he was unsure whether Barton was armed when he initially arrived at the scene, when he entered Barton's home, he saw Barton "standing in the kitchen" and "at that point," did not perceive a threat from him because Barton did not have "anything in his hands" and was not "in control of any type of a weapon." DE 28-7, Vann Dep. Tr., PageID 229. Thus, Vann testified that he realized, at least upon entering Barton's home, that Barton was not armed. Hence, while some use of force may have been reasonable when Vann was unsure whether Barton had a weapon, see *Dunn v. Matatall*, 549 F.3d 348, 354 (6th Cir. 2008) (noting that when officer is unsure whether suspect is armed, suspect poses greater threat to officer's safety), slamming Barton against the cabinet was no longer reasonable once Vann realized that Barton was not holding anything in his hands. *See Wells v. City of Dearborn Heights*, 538 F. App'x 631, 638 (6th Cir. 2013) (explaining that how much force is reasonable may evolve as an incident progresses and an officer learns new information).

Third, the facts do not suggest that Barton was resisting arrest or attempting to flee. Both Barton and Vann testified that Barton did not resist or evade arrest. Rather, when Vann told Barton to put his hands behind his back, Barton "complied and was placed under arrest" and "there was no struggle." DE 28-7, Vann Dep. Tr., PageID 229. That Barton did not attempt to evade arrest or flee is corroborated by the fact that he passed his identification through the screen door to his mother-in-law, who was on his porch, to hand to the officers before Vann crashed through the door.

Viewed in the light most favorable to Barton, a reasonable jury could find that Vann's actions violated Barton's right to be free from excessive force during the arrest. A reasonable jury could find that by the time Vann "threw [Barton] up against the counter like a linebacker," DE 28-15, Jennifer Barton Dep. Tr., PageID 282, Vann knew, or should have known, that Barton was not in control of any weapon and was not attempting to evade arrest or flee. There was no reasonable basis to believe that Barton was armed, posed an immediate threat, or was resisting arrest. Vann's observations after entry into the home confirmed any concern about Barton being armed was unfounded. Barton's allegation that Vann "lifted [him] up with his elbows underneath [his] body and [his] arm and literally picked [him] up and slammed [him] against [their] kitchen cupboards," plausibly makes out an excessive force violation. DE 28-3, Barton Dep. Tr., PageID 186.

"Having determined that there was a constitutional violation, the question now becomes whether the Fourth Amendment right violated by Defendants was clearly established." *Armstrong*, 432 F.3d at 700. "If there can be reasonable disagreement" about whether the officer's conduct was unlawful based on the law at the time of the incident, "then the right cannot be considered 'clearly established.'" *Id.* at 701. The plaintiff bears "the burden of showing that a right was clearly established at the time of an alleged injury." *T.S.*, 742 F.3d at 635. Qualified immunity thus "protects actions in the 'hazy border between excessive and acceptable force.'" *Mullenix*, 136 S. Ct. at 312 (quoting *Brosseau*, 543 U.S. at 198).

The right to be free from excessive force was clearly established in 2014. The Supreme Court has held that use of force that is not objectively reasonable violates the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 396 (1989). A compliant, non-threatening individual's right to be free from excessive force during arrest was also clearly established in this circuit. *See Baker v. City of Hamilton*, 471 F.3d 601, 607–08 (6th Cir. 2006); *Solomon*, 389 F.3d at 173; *Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006). The facts here do not present one of the hazy cases where an officer should be entitled to qualified immunity for making an objectively reasonable mistake as to the amount of force that was necessary. Vann's use of force occurred after he saw that Barton was unarmed, non-threatening, and compliant.

No. 18-1614 *Barton v. Martin, et al.* Page 17

We conclude that no reasonable officer would find that the circumstances surrounding the arrest of Barton required the level of force used here.

2.

A reasonable jury could also conclude that Vann used excessive force after arresting Barton. Once he was handcuffed, Barton claims that Vann "tossed [him] down" his front porch, elevated about three feet from the sidewalk, to Manchester. DE 28-3, Barton Depo Tr., PageID 188–89. This was after Barton told Vann of a prior shoulder injury. *Id.* The court has "held repeatedly that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." *Baker*, 471 F.3d at 608. "The reason for this is that once the detainee ceases to pose a threat to the safety of the officers or others, the legitimate government interest in the application of significant force dissipates." *Morrison*, 583 F.3d at 404–05. "'Gratuitous violence' inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial." *Id.* at 407. As Barton was incapacitated after being handcuffed, Vann tossing Barton down his front porch stairs was unreasonable. There were no officer safety concerns or other legitimate government interests justifying this use of force. This circuit's case law has long recognized the unconstitutionality of using gratuitous force against an incapacitated suspect. *See, e.g.*, *Coley v. Lucas County*, 799 F.3d 530, 540 (6th Cir. 2015); *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir. 2002). Vann was on notice that his conduct was a violation of Barton's constitutional right to be free from excessive use of force as it was obvious that Vann could not shove a handcuffed detainee off a front porch about three feet off the ground when there was no threat to the safety of the officers or others. Accordingly, Vann is not entitled to qualified immunity on Barton's excessive force claims.

IV.

For the reasons stated, we reverse the district court's grant of summary judgment on the basis of qualified immunity for the illegal entry, wrongful arrest, and excessive force claims against Vann.