RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0011p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

STACY CALES; ROAD TO RECOVERY, LLC,
     *Plaintiffs-Appellants*,

  *v.*

THEISEN BROCK LPA; KRISTOPHER JUSTICE,
     *Defendants-Appellees*.

⎫
⎪
⎪
⎬ No. 25-3299
⎪
⎪
⎭

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:23-cv-02997—Chelsey M. Vascura, Magistrate Judge.

Argued: December 9, 2025

Decided and Filed: January 14, 2026

Before: MOORE, CLAY, and WHITE, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ARGUED:** Mark A. Ropchock, SLATER & ZURZ, Akron, Ohio, for Appellant. Patrick Kasson, REMINGER CO., L.P.A., Columbus, Ohio, for Appellees. **ON BRIEF:** Mark A. Ropchock, SLATER & ZURZ, Akron, Ohio, for Appellant. Patrick Kasson, Austin Richards, REMINGER CO., L.P.A., Columbus, Ohio, for Appellees.

───────────────

**OPINION**

───────────────

CLAY, Circuit Judge. Plaintiffs Stacy Cales and Road to Recovery, LLC appeal the district court's grant of summary judgment to Defendants Kristopher Justice and Theisen Brock, LPA, based on the finding that the statute of limitations barred Plaintiffs' legal malpractice claim against Defendant Kristopher Justice, and as a result, their vicarious liability claim against

Defendant Theisen Brock, LPA. For the reasons set forth below, we **REVERSE** and **REMAND**.

## I. BACKGROUND

### A. Factual History

Stacy Cales ("Cales"), a nurse practitioner, owned and operated a business in West Virginia, Road to Recovery, LLC ("RTR"), that specialized in substance abuse treatment. In 2020, Cales began discussions to sell RTR to a buyer in West Virginia.

To assist in the sale of RTR, Cales retained Kristopher Justice ("Justice"), an attorney at a law firm in Ohio, Theisen Brock, LPA ("Theisen"). Justice drafted multiple documents for the sale, including a Promissory Note, which outlined that the buyer would provide an initial $18,000 payment, followed by 60 monthly payments equal to 50% of RTR's gross monthly revenues.

The Promissory Note also stated that the buyer's failure to provide a monthly payment on time would constitute a default. According to the Promissory Note, in the event of a default, the buyer would owe liquidated damages, calculated by multiplying the number of months remaining in the 60-month term by $2,500.

Cales testified that, while Justice was drafting the sales documents, she became concerned about the liquidated damages provision in the Promissory Note. Cales worried that the liquidated damages provision allowed the buyer to freely stop paying the agreed monthly amounts, and Cales would then be entitled to only the liquidated damages of $2,500 per remaining month. At the time of drafting, Cales expressed this concern about the liquidated damages provision to Justice in a phone call. During that phone call, Justice assured Cales that the implied covenant of good faith and fair dealing, in addition to the intent and spirit of the contract, would prevent such an outcome. In an email to Justice on April 14, 2023, Cales confirmed in writing that this conversation about the liquidated damages provision had taken place, and Justice reiterated the same advice in response.

Following Justice's execution of the sales documents in October or November of 2020, the buyer provided monthly payments between $17,000 and $23,000 for eight months. On August 11, 2021, Cales received an email from the buyer stating that the buyer would stop making payments.

After Cales received this email, Justice told Cales that another attorney at his law firm, Adam Schwendeman ("Schwendeman"), could file an enforcement action against the buyer. To that end, on October 19, 2021, Schwendeman filed a complaint against the buyer in West Virginia state court. On November 8, 2021, the buyer filed an answer in this West Virginia action. In the answer, the buyer asserted 19 affirmative defenses, including one that stated, "To the extent the Court finds an enforceable contract . . . Plaintiff's damages are limited to the liquidated damages as set forth in" the liquidated damages provision of the Promissory Note. West Virginia Answer, R. 30-6, Page ID # 805.

Cales testified that, while Schwendeman represented her in the West Virginia action, he "felt the contract was weak" and that he "couldn't defend it." Cales Dep., R. 30-1, 631-32. Cales also testified that she was disappointed with the progress and pace of the litigation and believed that Schwendeman was not sufficiently "aggressive" in his representation. *Id.* Cales eventually terminated her relationship with Schwendeman and Theisen in March 2022 and retained a new attorney, George Cosenza ("Cosenza"), in April 2022.

On April 13, 2023, Cosenza met with Cales and advised that, because of the liquidated damages provision, Cales would be entitled to only liquidated damages in the West Virginia action. Based in part on that advice, Cales agreed to a settlement, wherein the buyer paid only the liquidated damages amount to resolve the West Virginia action.

**A. Procedural History**

On September 19, 2023, Plaintiffs Cales and R&R brought this diversity action in the district court, alleging legal malpractice against Defendant Justice and vicarious liability against Defendant Theisen, based on Defendant Justice's alleged failure to properly draft the sales documents such that Plaintiffs were "forced to accept liquidated damages in the event of a default." Compl., R. 1, Page ID #7.

The parties simultaneously filed for summary judgment. The district court granted summary judgment to Defendants and denied summary judgment to Plaintiffs, holding that the Ohio statute of limitations barred Plaintiffs' claims. The district court reasoned that Plaintiff Cales' decision in March 2022 to terminate Schwendeman and hire another attorney to represent her in the West Virginia action constituted a cognizable event, which began the one-year statute of limitations for Plaintiffs' legal malpractice claim. The district court held that, because Plaintiffs did not file their complaint until September 19, 2023, the statute of limitations barred their legal malpractice claim, and resultingly, barred their vicarious liability claim. Plaintiffs now appeal the district court's grant of summary judgment to Defendants based on the finding that the statute of limitations barred Plaintiffs' claims.

## II. DISCUSSION

### A. Standard of Review

"As with any basis for summary judgment, a grant of summary judgment on the ground that a claim is barred by the applicable limitations period is reviewed *de novo* by this court." *Pryor v. Ohio State Univ.*, 139 F.4th 536, 538 (6th Cir. 2025) (quoting *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### B. Analysis

The parties agree that, pursuant to Ohio law, the applicable statute of limitations period for Plaintiffs' legal malpractice claim is one year. Ohio Rev. Code § 2305.11(A) ("An action for . . . legal malpractice against an attorney or a law firm . . . shall be commenced within one year after the cause of action accrued.").

Under Ohio law, a legal malpractice claim accrues, and the statute of limitations begins to run, on the later of two dates: (1) pursuant to the termination rule, "when the attorney-client relationship for that particular transaction or undertaking terminates;" or (2) pursuant to the discovery rule, "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against his attorney." *F.D.I.C. v. Alexander*, 78 F.3d 1103, 1107 (6th Cir. 1996) (quoting *Zimmie v. Calfee, Halter & Griswold*, 538 N.E.2d 398, 401 (Ohio 1989)). We "must examine both dates, and the later of the two will control when the statute begins to run." *Id.*

### 1. Termination Rule

As to the termination rule, the parties agree that the attorney-client relationship between Plaintiffs and Defendant Justice terminated in October or November 2020, when Defendant Justice executed the sales documents at issue in Plaintiffs' legal malpractice claim. For "purposes of the accrual of a legal malpractice claim, an attorney-client relationship ends 'when the attorney-client relationship for *that particular transaction or undertaking terminates*.'" *Id.* at 1109 (quoting *Zimmie*, 538 N.E.2d at 401; citing *Omni-Food & Fashion, Inc. v. Smith*, 528 N.E.2d 941, 942 (Ohio 1988)). Resultingly, "continued general representation" does not toll the statute of limitations. *Omni-Food & Fashion, Inc.*, 528 N.E.2d at 944 (quotations omitted). Plaintiffs base their legal malpractice claim on Defendant Justice's alleged improper drafting of the sales documents. Since Defendant Justice executed the sales documents at issue in October or November 2020, and at that time "the attorney-client relationship" between Defendant Justice and Plaintiffs for "that particular transaction or undertaking" terminated, *see F.D.I.C.*, 78 F.3d at 1107, Plaintiffs' cause of action for legal malpractice accrued in October or November of 2020 pursuant to the termination rule.

### 2. Discovery Rule

As to the discovery rule, the parties dispute on what date the cognizable event occurred. Plaintiffs argue that the "only definitive cognizable event" occurred on April 13, 2023, when Cosenza pointed out the liquidated damages provision to Plaintiff and advised that, because of

that provision, Plaintiff would be entitled to only liquidated damages in the West Virginia action. Appellants' Br. at 34. Defendants clarified at oral argument that their position[1] is that the cognizable event occurred either: (1) on November 8, 2021, when the buyer asserted the affirmative defense in the West Virginia action that invoked the liquidated damages provision, or (2) in March 2022, when Plaintiff Cales terminated her relationship with Schwendeman and Defendant Theisen and soon after hired Cosenza to represent her in the West Virginia action.

A cognizable event is an event that "should have alerted a reasonable person that a questionable legal practice may have occurred." *Zimmie*, 538 N.E.2d at 402. The cognizable event "puts the plaintiff on notice to investigate the facts and circumstances relevant to" his or her claim to pursue legal remedies. *Flowers v. Walker*, 589 N.E.2d 1284, 1288 (Ohio 1992) (citations omitted). In determining a cognizable event, the focus is on what the plaintiff "is or should be aware of and how a reasonable person would react under the circumstances." *Socha v. Weiss*, 97 N.E.3d 818, 823 (Ohio Ct. App. 2017). A plaintiff need not be "aware of the full extent of the injury before there is a cognizable event." *Zimmie*, 538 N.E.2d at 402 (discussing *Allenius v. Thomas*, 538 N.E.2d 93 (Ohio 1989)). Nor does the plaintiff need to have "discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations." *Flowers*, 589 N.E.2d at 1287-88 (citing *Allenius*, 538 N.E.2d at 96). "[C]onstructive knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." *Id.* at 1287 (citations omitted).

In this case, the cognizable event occurred on April 13, 2023, when Cosenza advised Plaintiff Cales that, because of the liquidated damages provision, she would be entitled to only liquidated damages in the West Virginia action. That conversation "should have alerted a reasonable person that a questionable legal practice may have occurred," specifically, that

---

[1]In their appellate brief, Defendants argued that "numerous cognizable events" occurred, including: (1) when Plaintiff Cales expressed concern about the liquidated damages provision prior to the execution of the sales documents, (2) when Plaintiff Cales reviewed the buyer's answer in the West Virginia action, which raised its affirmative defense that Plaintiffs' recovery was limited to liquidated damages, (3) when Plaintiff Cales believed that her attorney in the West Virginia action thought that the sales documents were "weak," and (4) when Plaintiff Cales terminated legal representation by Defendant Theisen. Appellee's Br. at 16-19. At oral argument, Defendants narrowed their argument to only two possible cognizable events.

Defendant Justice may have improperly drafted the sales documents so as to limit Plaintiffs' entitlement to damages. *See Zimmie*, 538 N.E.2d at 402. Up until that point in the West Virginia action, Plaintiff Cales had "reasonably relied upon [Defendant Justice's] representations" that the contract would not allow the buyer to pay only liquidated damages upon default, and she had not received advice from any of her attorneys indicating otherwise. *See Hilario v. Taft, Stettinius & Hollister, L.L.P.*, 955 N.E.2d 391, 399 (Ohio Ct. App. 2011). Only in that conversation should Plaintiff Cales have become aware that Defendant Justice may have improperly drafted the sales documents. *See Socha*, 97 N.E.3d at 823. The conversation with Cosenza gave Plaintiff Cales "notice to investigate the facts and circumstances relevant to" her legal malpractice claim against Defendant Justice, which is precisely what Plaintiff Cales pursued thereafter. *See Flowers*, 589 N.E.2d at 1288 (citations omitted).

Defendants argue that the cognizable event occurred instead when the buyer filed their answer in the West Virginia action on November 8, 2021 and asserted the affirmative defense that, because of the liquidated damages provision, Plaintiffs would be entitled to only liquidated damages. Precisely, the language in the buyer's answer that Defendants argue created a cognizable event is: "To the extent the Court finds an enforceable contract, in whole or in part, Plaintiff's damages are limited to the liquidated damages as set forth in Section 3 of the November 1, 2020 Promissory Note less any amounts owed to the Defendants for any Counterclaims set forth herein." West Virginia Answer, R. 30-6, Page ID # 805.

Defendants contend that Plaintiff Cales either was aware or should have been aware of the significance of this language because Plaintiff Cales read every legal document in the West Virginia action, including the buyer's answer that asserted the affirmative defense. But the record does not support the contention that Plaintiff Cales read and understood the affirmative defense or should have done so. Plaintiff Cales testified, "I don't know if I read the whole thing. I would just save them in a file on my e-mail, because they were so long." Cales Dep., R. 30-1, Page ID # 622. Plaintiff Cales later acknowledged that she may have read the answer but also testified, "I'll be honest with you, you know how dry and hard it is for me to understand this?" *Id.* at 624. Further, this language was buried within a 14-page legal document, wherein the buyer asserted 18 other affirmative defenses. Our focus is on what the plaintiff "is or should be aware

of and how a reasonable person would react under the circumstances," *Socha*, 97 N.E.3d at 823, and this affirmative defense would not have provided a reasonable person sufficient awareness of the facts to begin investigating a potential legal malpractice claim against their attorney.

Moreover, when the buyer asserted this affirmative defense, Plaintiff Cales still "reasonably relied upon [Defendant Justice's] representations" that the contract would not allow the buyer to pay only liquidated damages upon default. *See Hilario*, 955 N.E.2d at 399. During the drafting process, Defendant Justice assured Plaintiff Cales that the implied covenant of good faith and fair dealing, in addition to the intent and spirit of the contract, would prevent the buyer from owing only liquidated damages upon default. At the onset of the West Virginia action, Plaintiff reasonably relied on Defendant Justice's advice and trusted that Schwendeman would defend her interests in the litigation. It would not have been reasonable to expect Plaintiff Cales to second-guess her attorneys based on certain language included within the answer. Although the answer suggested that the buyer intended to rely on the liquidated damages provision to argue that it owed only liquidated damages, such language does not refute the advice given by Justice, that the covenant of good faith and fair dealings would not allow such a result. The affirmative defense thus cannot be said to alert "a reasonable person that a questionable legal practice may have occurred," *Zimmie*, 538 N.E.2d at 402, or to put a plaintiff "on notice to investigate the facts and circumstances relevant to" his or her claim to pursue legal remedies. *Flowers*, 589 N.E.2d at 1288 (citations omitted).

Defendants point to two cases wherein an affirmative defense constituted a cognizable event. *See Jackson v. Greger*, No. 23571, 2010 WL 2706315, at *7 (Ohio Ct. App. July 9, 2010) (holding that the assertion of an affirmative defense in an answer "would have placed a reasonable person on notice of a need to pursue possible remedies against her former attorney for the alleged injury"); *see also Rayess v. McNamee*, No. 25915, 2014 WL 2169928, at *6 (Ohio Ct. App. May 23, 2014) (holding that the assertion of an affirmative defense in a prior lawsuit "should have put [the plaintiff] on notice of a potential legal-malpractice action"). But in *Vagianos v. Halpern*, a different district in the Ohio Court of Appeals rejected the argument that an affirmative defense created a cognizable event. No. 76408, 2000 WL 1844752, at *2 (Ohio Ct. App. Dec. 14, 2000). The court reasoned, "[T]he mere assertion of a defense does not

establish that the defense has any merit, much less that counsel's substandard representation is responsible for the availability of the defense . . . To rule otherwise would result in a flood of unnecessary complaints filed by clients who, in order to preserve their right to file, felt compelled to sue their former attorneys every time an affirmative defense suggested the possibility of malpractice. A possibility or remote chance is not equivalent to a cognizable event." *Id.* Such reasoning informs our analysis in this case, particularly given that Defendant Justice provided Plaintiff Cales with a reasonable explanation for why the affirmative defense did not have merit. And, in any event, as acknowledged by Defendants at oral argument, this Court is not bound by these decisions, as decisions from the various appellate districts within the Ohio Court of Appeals do not create binding legal authority elsewhere. *See State v. Dovangpraseuth*, No. 05AP-88, 2006 WL 827783, at *7 (Ohio Ct. App. Mar. 30, 2006) ("[A]n appellate decision from another district . . . whether reported or not, is not *controlling authority*." (citation omitted)); *see also Mollett v. Lawrence Cnty. Bd. of Dev. Disabilities*, 242 N.E.3d 744, 762 (Ohio Ct. App. 2024) (holding that although the Ohio Court of Appeals is "not bound by decisions from other Ohio Appellate Districts," such decisions are afforded "due consideration and respect" (quotations and citations omitted)); *see also Croce v. New York Times Co.*, 930 F.3d 787, 792 (6th Cir. 2019). Therefore, the mere fact that an affirmative defense constituted a cognizable event in two prior cases does not compel that result here, nor do the facts of this case indicate that the affirmative defense was a cognizable event.

Defendants alternatively argue that the cognizable event occurred in March 2022 when Plaintiff Cales terminated Schwendeman as her representation in the West Virginia action and soon after hired Cosenza as a replacement. Defendants point to Plaintiff Cales' testimony about her reasoning for the termination: "From the time that [Schwendeman] took [the case] . . . my opinion is they felt the contract was weak . . . And I told [Schwendeman] we needed to be more aggressive. I don't know why the ball is always in [the other side's] court, and I just felt like . . . it was weak and we were just spinning wheels. Like, we weren't getting anywhere . . . I was just done. I'm like, I need someone who's going to be aggressive and be a bulldog, and they weren't it . . . Like, it's almost like they couldn't defend [the contract], or like they were just, like, 'Okay, well [the other side] want[s] to do an extension, so we're going to give them an extension.'" Cales Dep., R. 30-1, Page ID # 631-32. In this testimony, Plaintiff Cales clarified that

Schwendeman did not communicate to her that he felt that the contract was weak. Instead, that was her own perception based on Schwendeman's repeated acquiescence to opposing counsel's requests. Also in this testimony, Plaintiff Cales confirmed that she was dissatisfied with the pace of the litigation, which ultimately led to her hiring a new attorney. It is true that this testimony shows that, by the time that Plaintiff Cales terminated Schwendeman, she had begun to doubt the effectiveness of his representation. But none of this testimony establishes that when Plaintiff Cales terminated Schwendeman she was or should have been "aware of" Defendant Justice's possible legal malpractice in drafting the sales documents in particular. *See Socha*, 97 N.E.3d at 823. Rather, this testimony illustrates that Plaintiff Cales maintained multiple reasons for the termination, none of which necessarily point to Defendant Justice having committed legal malpractice. Indeed, at oral argument, Defendants acknowledged that they "don't know" whether Defendant Justice's alleged malpractice motivated the termination. Oral Argument at 28:38-41. Plaintiff Cales' own termination of Schwendeman thus cannot be said to alert "a reasonable person that a questionable legal practice may have occurred," *Zimmie*, 538 N.E.2d at 402, or to put a plaintiff "on notice to investigate the facts and circumstances relevant to" her claim to pursue legal remedies. *Flowers*, 589 N.E.2d at 1288 (citations omitted).

Thus, on the record before this Court, April 13, 2023 is the earliest date in this case that "should have alerted a reasonable person that a questionable legal practice may have occurred," *see Zimmie*, 538 N.E.2d at 402, when Cosenza advised Plaintiff Cales that, because of the liquidated damages provision, she would be entitled to only liquidated damages in the West Virginia action. Since this date of accrual under the discovery rule is the "later of the two" dates, as compared to the date of accrual under the termination rule (October or November 2020), the statute of limitations began to run on April 13, 2023. *See F.D.I.C.*, 78 F.3d at 1107. Plaintiffs had one year from that date to file their legal malpractice claim, and they timely filed their complaint on September 19, 2023. The statute of limitations, therefore, did not expire before Plaintiffs filed their complaint. Accordingly, the district court erred in granting summary judgment to Defendants based on the finding that the statute of limitations barred Plaintiffs' legal malpractice claim and, resultingly, their vicarious liability claim as well.

## III.  CONCLUSION

For the reasons set forth above, this Court **REVERSES** the judgment of the district court and **REMANDS** for further proceedings consistent with this opinion.